Robert J. PELLETIER,
Plaintiff–Appellee,

v.

**FEDERAL HOME LOAN BANK OF SAN FRANCISCO, et al.,**
Defendants,

and

**John W. BEHRENS, Defendant–Appellant.**

Nos. 89–56265, 92–55023.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1991.

Submission Vacated July 24, 1991.

Resubmitted Feb. 19, 1992.

Decided June 29, 1992.

Richard A. Olderman, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Samuel T. Rees, Knapp, Petersen & Clarke, Glendale, Cal., for plaintiff-appellee.

Before: SCHROEDER and REINHARDT, Circuit Judges, and KING, Senior District Judge.[*]

REINHARDT, Circuit Judge:

Appellee Robert J. Pelletier brought this lawsuit to challenge certain regulatory actions that resulted in his dismissal as managing officer of Pioneer Savings and Loan Association and his subsequent inability to find comparable employment in the savings and loan industry. As to defendant Behrens, Pelletier alleged both Bivens[1] and common law tort claims. Behrens now appeals the district court's denials of his motion to dismiss the Bivens claims based on qualified immunity and his motion to substitute the United States in his place as to the common law tort claims, pursuant to the Federal Employees Liability Reform and Tort Compensation Act (FELRTCA). We affirm in part and reverse in part. With respect to the qualified immunity issue, because Behrens has not previously appealed any denial of qualified immunity, we have jurisdiction to consider his appeal. We hold that Pelletier's allegations were sufficient to survive a motion to dismiss. With respect to the substitution issue, however, we conclude that the district court improperly applied a narrow "scope of authority" test rather than the broader "scope of employment" test required by the FELRTCA. Under the broader rule, we hold that as a matter of law Behrens was acting within the scope of his employment when he took the actions complained of by Pelletier. Accordingly, Behrens is entitled to substitution.

## I

This case arises out of the early years of the savings and loan crisis. On March 29, 1984, the Federal Home Loan Bank Board (FHLBB) formally approved a *de novo* application for insurance of accounts made by South Coast Savings and Loan Association (South Coast). The FHLBB imposed a number of requirements on South Coast as conditions of regulatory approval. In particular, the FHLBB directed South Coast to "provide for the employment of a qualified full-time executive managing officer, subject to approval by the Principal Supervisory Agent." Resolution No. 84–164, ¶ 10(p) (March 29, 1984).[2] In early 1985, South Coast was succeeded in interest by

---

[*] Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2. The full text of the requirement reads:

 [T]he institution shall provide for employment of a qualified full-time executive managing officer, subject to approval by the Principal Supervisory Agent, on a salaried basis who shall be charged with full administrative and managerial responsibilities of the institution under policies established by its board of directors. In the event of the managing officer's removal, incapacity or resignation during the period between the commencement of operations and the beginning of the first full fiscal year and for the three years following the beginning of the first full fiscal year, the continuation or succession of competent management will also be subject to the Principal Supervisory Agent's approval.

 Resolution No. 84–164, ¶ 10(p) (March 29, 1984).

Pioneer Savings and Loan Association (Pioneer). On March 18, 1985, Pioneer named appellee Robert J. Pelletier as its managing officer and, pursuant to Resolution No. 84–164, requested approval from the FHLBB.

Prior to accepting the position at Pioneer, Pelletier had served as Senior Vice President in charge of the Major Loan Division of the Beverly Hills Savings and Loan Association (BHSL).[3] In that capacity, Pelletier also sat on BHSL's Senior Loan Committee, which was responsible for evaluating and approving loans that exceeded dollar limits or fell outside of other criteria established by BHSL's Board of Directors. On April 23, 1985, shortly after Pioneer had requested FHLBB approval of Pelletier as its managing officer, the FHLBB declared BHSL insolvent and placed the institution in receivership. A continuing investigation by the Federal Savings and Loan Insurance Corporation (FSLIC) into the failure of BHSL raised questions regarding the conduct of a number of BHSL's senior officers, including Pelletier.

Appellant John W. Behrens, a Supervisory Agent of the FHLBB, took over the South Coast/Pioneer file from another Supervisory Agent in or about April, 1986.[4] On May 8, 1986, in a confidential letter on FHLBB letterhead, Behrens informed Pioneer that the FHLBB would be unable to proceed with the application for approval of Pelletier as Pioneer's managing officer until the investigation of BHSL was complete. The letter read as follows:

This is in response to the application by Pioneer Savings, requesting approval for Mr. Robert Pelletier to become managing officer of the association. We wish to advise you that an inquiry is currently being conducted by the Federal Savings and Loan Insurance Corporation (FSLIC) into the failure of Beverly Hills Savings and Loan Association, and be-

cause of Mr. Pelletier's previous employment with that institution this office is unable at this time to proceed with the application until that inquiry is complete. In this regard, we believe it would be appropriate if Mr. Pelletier would step aside from the management of the association at this time and until such time as the investigation into the failure of Beverly Hills savings is complete.

In view of the foregoing, we believe it is imperative that the Board of Directors initiate a search for a new managing officer without delay. We ask that you keep this office advised as to your progress in this regard.

Upon receipt of the letter from Behrens, Pioneer requested Pelletier's resignation. When Pelletier refused to resign, Pioneer fired him. Despite numerous attempts, Pelletier subsequently has been unable to obtain comparable employment in the savings and loan industry. Pelletier alleges that several positions were tentatively offered to him, but that those offers were all withdrawn when the prospective employers learned of the circumstances surrounding Pelletier's departure from Pioneer.

In February, 1989, Pelletier filed suit against Behrens, the Federal Home Loan Bank of San Francisco, the FHLBB, and the United States, asserting that the decision to direct Pioneer to terminate Pelletier was made summarily and without process, and that since Pelletier's dismissal from Pioneer the defendants had made a concerted and successful effort to prevent Pelletier from securing employment in the financial services industry. Pelletier alleged that this conduct on the part of the defendants violated his fifth amendment right to procedural due process and deprived him of his constitutionally protected liberty interest in employment within the financial services industry. In addition, Pelletier alleged common law tort claims for interfer-

---

3. Pelletier resigned his position at BHSL in March, 1984, because he did not wish to relocate when BHSL moved to new offices. From mid-1984 to early 1985, Pelletier served as managing officer of Equitable Savings and Loan Association of Orange County. Again, he resigned rather than relocate his home. Shortly thereafter, he accepted Pioneer's offer of employment.

4. Behrens is a salaried employee of the Federal Home Loan Bank of San Francisco. On March 17, 1984, the FHLBB adopted Formal Resolution 84–126, which designated Behrens a Supervisory Agent of the FHLBB and FSLIC for the Eleventh District. In that capacity, Behrens became responsible for monitoring the operations of a number of federally insured savings and loan associations to ensure regulatory compliance. 12 C.F.R. § 501.11 (1989).

ence with contractual rights, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.[5]

Behrens filed a motion to dismiss, or in the alternative for summary judgment. He contended that Pelletier's constitutional tort claims were barred by the statute of limitations and that, in any event, judicial creation of a *Bivens* remedy was preempted by the extensive federal regulation of the savings and loan industry. In the alternative, Behrens argued that he was entitled to qualified immunity from liability for the actions described. As to Pelletier's common law tort claims, Behrens argued that the United States should be substituted in his place as defendant, pursuant to the Federal Employees Liability Reform and Tort Compensation Act (FELRTCA), Pub.L. No. 100–694, 102 Stat. 4563 (1988) (amending Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680). As required by the FELRTCA, Behrens submitted a scope of employment certification prepared by the Attorney General. 28 U.S.C. § 2679(d)(1).

The district court agreed that to the extent Pelletier sought relief for the loss of his job at Pioneer in 1986, his constitutional tort claims, as well as his claims for infliction of emotional distress, were barred by the statute of limitations.[6] However, the court denied Behrens's motion to dismiss Pelletier's constitutional claims as time-barred to the extent that Pelletier alleged continuing efforts to prevent him from securing employment in the savings and loan industry. Similarly, the court denied Behrens's motion to dismiss Pelletier's common law claims for infliction of emotional distress to the extent that those claims alleged continuing torts. The court also denied Behrens's motion to dismiss Pelletier's

claims for intentional interference with contractual rights and negligence. The court declined to rule on Behrens's motion for summary judgment, on the ground that it would be premature to do so before discovery had been conducted.

Behrens timely appealed the district court's partial denial of his motion to dismiss Pelletier's constitutional and common law tort claims.[7] However, because it was unclear from the district court's order whether or not the court had ruled on Behrens's request for substitution of the United States as defendant with respect to Pelletier's common law tort claims, we vacated submission of the case and remanded to allow the district court to address the substitution issue. On limited remand, the district court denied Behrens's motion for substitution on the ground that removal of Pelletier from his position as managing officer was not within the scope of Behrens's authority as defined in 12 C.F.R. § 501.11 (1989), *repealed by* 54 Fed.Reg. 49,420 (1989). Behrens filed a separate appeal from that order. The appeals were consolidated by order of this court.

## II

Behrens argues that the comprehensive federal regulation of the savings and loan industry precludes judicial creation of a *Bivens* remedy in this case. In the alternative, he argues that the allegations that form the basis of Pelletier's *Bivens* claims are as a matter of law insufficient to survive a motion to dismiss on the ground of qualified immunity. In response, Pelletier contends that the denial of a motion to dismiss is not an appealable interlocutory order. Because Pelletier's argument concerns our jurisdiction to hear this appeal, we address it first. We conclude that the

---

**5.** Pelletier also sought damages and injunctive relief for alleged violations of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, and the Privacy Act, 5 U.S.C. § 552a.

**6.** The district court found that the statute of limitations for a *Bivens* claim originating in California is one year. The court's finding appears contrary to the rule established by our holding in *Marshall v. Kleppe,* 637 F.2d 1217, 1223–24 (9th Cir.1980); *see Van Strum v. Lawn,*

940 F.2d 406 (9th Cir.1991) (holding that the statute of limitations applicable to *Bivens* claims is the state statute of limitations for personal injury, but declining to give that holding retroactive effect). However, the parties do not contest this part of the district court's order in this limited interlocutory appeal.

**7.** Behrens does not contest the district court's disposition of his motion to dismiss with respect to Pelletier's APA and Privacy Act claims.

denial of a motion to dismiss on the ground of qualified immunity is immediately appealable, but that Pelletier has alleged sufficient facts to survive such a motion.

### A

We are satisfied that a denial of qualified immunity is an appealable "final" order under the test set forth in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), regardless of whether that denial takes the form of a refusal to grant a defendant's motion to dismiss or a denial of summary judgment. *Fry v. Melaragno*, 939 F.2d 832, 835 (9th Cir.1991); *see also Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) ("The denial of a defendant's *motion to dismiss* or for summary judgment on the ground of qualified immunity easily meets [the *Cohen*] requirements.") (emphasis added); *Schrob v. Catterson*, 948 F.2d 1402, 1406–07 (3d Cir.1991).[8] The Court has made it clear that because the entitlement at issue is "an *immunity from suit* rather than a mere defense to liability," claims of qualified immunity should be resolved at the earliest possible stage of the proceedings. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in original) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982)). A requirement that official defendants answer wholly meritless claims for relief or adduce facts to refute entirely unsubstantiated allegations would run counter to the Court's express direction. We conclude that we have jurisdiction to consider Behrens's appeal.

We do not, however, hold that an official defendant claiming qualified immunity may take advantage of the several *opportunities* for immediate appeal afforded him by bringing repeated pretrial appeals. Pelletier's contention that a rule allowing interlocutory appeals from denials of motions to dismiss, as well as from denials of summary judgment, will encourage official defendants in civil rights cases to use such appeals as delaying tactics is not an idle one. As we have previously observed, "government defendants apparently now deem it mandatory to bring these appeals from any adverse ruling, no matter how clearly correct the trial court's decision." *Schwartzman v. Valenzuela*, 846 F.2d 1209, 1210 (9th Cir.1988); *see also Manhattan Beach Police Officers Ass'n v. City of Manhattan Beach*, 881 F.2d 816, 817 (9th Cir.1989). If appeals from denials of qualified immunity are also to become routine at the motion to dismiss stage, the burden on civil rights plaintiffs, in terms of both delay and expense, could be considerable.

More important, the practice of filing routine appeals from denials of pretrial motions for qualified immunity, even in cases in which the district court was clearly correct, evinces a flagrant disregard of the Court's intent in creating the qualified immunity doctrine. The doctrine was created in order to protect good faith exercises of official discretion, not to shield willful or knowing lawless action taken under color of official authority. *Butz v. Economou*, 438 U.S. 478, 505–07, 98 S.Ct. 2894, 2910–11, 57 L.Ed.2d 895 (1978). It was intended to permit "[i]nsubstantial lawsuits [to] be quickly terminated," *id.* at 507, 98 S.Ct. at 2911, not to deter legitimate lawsuits from proceeding. The Court has repeatedly and emphatically refused to accord absolute immunity to government officials accused of constitutional transgressions. *Id.* at 505–06, 98 S.Ct. at 2910–11; *Scheuer v. Rhodes*, 416 U.S. 232, 237, 248–49, 94 S.Ct. 1683, 1686, 1692–93, 40 L.Ed.2d 90 (1974).

For the same reasons that an official defendant may not use the immediate appeal that the law allows him to convince the court to resolve disputed factual issues in his favor, *see, e.g., Velasquez v. Senko*, 813 F.2d 1509, 1511 (9th Cir.1987), he also may not demand repeated appellate consideration of a claim of qualified immunity that the district court has repeatedly reject-

---

**8.** *Cf. Lutz v. Secretary of the Air Force*, 944 F.2d 1477 (9th Cir.1991) (allowing interlocutory appeal from denial of motion to dismiss based on the *Feres* doctrine); *Marx v. Government of Guam*, 866 F.2d 294, 296 (9th Cir.1989) (allowing interlocutory appeal from denial of motion to dismiss based on sovereign immunity); *Schlegel v. Bebout*, 841 F.2d 937, 941 (9th Cir. 1988) (allowing interlocutory appeal from denial of motion to dismiss based on absolute immunity).

ed. One such interlocutory appeal is all that a government official is entitled to and all that we will entertain. We do not think that a rule limiting defendants to one bite at the apple will be "peculiarly disruptive of effective government." *Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Under *Mitchell,* an official defendant claiming qualified immunity is entitled to immediate appellate consideration of a limited issue only. That issue is the narrow and "purely legal" one of "whether the facts alleged ... support a claim of violation of clearly established law." 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9. If the defendant's entitlement to qualified immunity is truly ascertainable as a matter of law without a need for full discovery or trial, determination of that fact should not require more than one judiciously timed appeal. As we discuss below, on appeal from a denial of a motion to dismiss we, like the district court, are required to view the nonmoving party's allegations in a generous light. If the district court determines that the defendant's entitlement to qualified immunity is not established at the motion to dismiss stage, he appeals at his peril. He may appeal immediately or he may answer the complaint and defer pursuit of his qualified immunity claim, and of appellate review of any denial of that claim, until it appears that a motion for summary judgment would be appropriate. Behrens has chosen the former route. We affirm his right to make that choice.

### B

Behrens asserts that the comprehensive federal regulation of the savings and loan industry constitutes a "special factor" counseling against judicial creation of a *Bivens* remedy for the wrongs allegedly suffered by Pelletier. *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988) ("When the design of a governmental program suggests that Congress has provided what it considers adequate remedial mechanisms

for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies."); *see also Saul v. United States,* 928 F.2d 829, 835–40 (9th Cir.1991). While this argument may merit consideration by the district court at a later stage in the proceedings, it is outside the limited scope of this interlocutory appeal. On review of a denial of qualified immunity, "[w]e have jurisdiction only to decide if defendant's conduct violated ... clearly established constitutional rights." *Todd v. United States,* 849 F.2d 365, 368 (9th Cir.1988). The question whether a judicially created *remedy* is available for that conduct is not properly before us. Accordingly, we decline to address Behrens's preemption argument.

### C

We now proceed to consider whether, as Behrens maintains, Pelletier has failed to allege facts sufficient to support his claims that Behrens's conduct violated his clearly established constitutional rights. Because the district court elected to treat Behrens's motion for qualified immunity primarily as a motion to dismiss Pelletier's complaint for failure to state a claim, we will treat Behrens's appeal in like fashion.[9] We agree with the district court that Pelletier's pleadings are sufficiently specific.

As an initial matter, Behrens argues that no constitutionally protected liberty or property interest in private employment exists where that employment is contingent on regulatory approval. Behrens relies on the Fifth Circuit's decision in *Connelly v. Comptroller of the Currency,* 876 F.2d 1209, 1213 (5th Cir.1989). We have not yet had occasion to consider whether a requirement of regulatory approval suffices to negate entirely the constitutional protection to which a privately employed individual would otherwise be entitled. Moreover, we need not do so here. In light of the district court's partial dismissal of Pelleti-

---

**9.** The court declined to rule on Behrens's alternative motion for summary judgment on the ground that that motion was premature. It is not clear that Behrens has appealed that aspect of the district court's ruling. Moreover, his

briefs fail to discuss the question of prematurity. In any event, the decision was well within the district court's discretion, and we will not disturb it.

er's *Bivens* claims as barred by the statute of limitations, the question whether Pelletier had a cognizable liberty or property interest in the particular position that he held at Pioneer is not before us.

■ The district court preserved Pelletier's *Bivens* claims only to the extent that those claims allege continuing efforts by Behrens to prevent Pelletier from securing employment in the savings and loan industry.[10] We have recognized that ongoing interference with an individual's pursuit of his chosen livelihood may amount to deprivation of a constitutionally protected liberty interest in employment:

> An individual has a liberty interest in employment protected by the Due Process Clause if the dismissal is "for reasons that might seriously damage his standing in the community," *Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1100 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982), or if the dismissal effectively precludes future work in the individual's chosen profession, *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

*Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir.1987). It is with respect to this clearly established right that we must examine the allegations contained in Pelletier's complaint.

■ In order to survive a motion for *summary judgment*, the nonmoving party ordinarily must furnish affidavits containing admissible evidence tending to show the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In *DiMartini v. Ferrin*, 889 F.2d 922 (9th Cir.1989), *amended on other grounds*, 906 F.2d 465 (9th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991), we considered this requirement as applied to a motion for summary judgment based on qualified immunity. We concluded that because the pendency of such a motion stays discovery by the

plaintiff, the requirement of admissibility is somewhat relaxed and "greater tolerance of speculation and inference must be afforded." *Id.* at 927. Accordingly, affidavits submitted by the plaintiff that contain hearsay or other inadmissible evidence will suffice to preclude summary judgment if those affidavits are otherwise sufficient to defeat a claim of entitlement to qualified immunity. *Id.*

Behrens argues that Pelletier's charges of concerted action amount to no more than "vague assumptions about informal communications within an industry" and therefore fall outside the scope of the protection afforded by *DiMartini*. *Id.* We agree with Behrens that Pelletier's complaint raises at most nebulous theories of conspiracy, and that those theories in their current form would be insufficient to survive a motion for summary judgment even under *DiMartini*. However, as we have previously discussed, this case does not come before us following denial of a motion for summary judgment. Rather, Behrens appeals the district court's denial of his motion to dismiss Pelletier's *Bivens* claims.

■ On a motion to dismiss, the court must accept the complaint's allegations as true in their entirety, *Williford v. California*, 352 F.2d 474, 475–76 (9th Cir.1965), and must draw all reasonable inferences in favor of the nonmoving party, *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir.1981). There is no requirement that the nonmoving party supplement his pleadings with affidavits in order to survive a motion to dismiss.[11] If, liberally construed, Pelletier's complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, Pelletier is entitled to go forward with his *Bivens* claims against Behrens. *Cf. McCalden v. California Library Ass'n*, 955 F.2d 1214, 1221 (9th Cir.1992).

Upon examination of Pelletier's complaint, we conclude that it meets this mini-

---

10. Most executive level appointments in that industry do not require prior regulatory approval. Thus, the *Connelly* issue is not relevant here.

11. To the contrary, our review of the district court's ruling on a motion to dismiss is limited to the contents of the complaint. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989).

mal standard. Pelletier alleges that "[s]everal senior level jobs have been tentatively offered to him only to be withdrawn after learning of [Behrens's letter] and its impact upon Pelletier's employment at Pioneer" and that he remains "unable to secure other employment in the savings and loan and the financial institutions industries." Taken to be true, as they must for purposes of this appeal, those allegations, read in light of the more general allegations of the complaint, are sufficient to support the claim that Behrens violated Pelletier's clearly established right to pursue his chosen profession free from interference by the government.[12] *Merritt,* 827 F.2d at 1371. The general allegations that the defendants, including Behrens, engaged in concerted action aimed at preventing Pelletier from securing employment in the savings and loan industry and at destroying his reputation support the inference that a cause and effect relationship existed between conduct on Behrens's part and the withdrawal of particular job offers. Accordingly, the district court's denial of Behrens's motion to dismiss Pelletier's *Bivens* claims was proper.[13]

### III

Behrens contends that under the FELRTCA the district court was required to substitute the United States in his place as defendant with respect to Pelletier's common law tort claims. Again, Pelletier argues that the denial of substitution is not an appealable order. We disagree. An order denying substitution under the FELRTCA is precisely the type of order for which interlocutory review is contemplated under the *Cohen* collateral order doctrine. On the merits of the substitution issue, we conclude that the district court erroneously applied a "scope of authority" test to determine Behrens's eligibility for substitution rather than the broader "scope of employment" test required by the FELRTCA, and that under the correct analysis it is clear as a matter of law that Behrens was acting within the scope of his employment with respect to Pelletier. We therefore reverse the district court's denial of substitution.

### A

To constitute an appealable "final decision" under 28 U.S.C. § 1291, an order "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (citing *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1948)). We join the Fifth Circuit in holding that a district court order denying substitution of the United States as defendant under the FELRTCA satisfies this standard. *Mitchell v. Carlson,* 896 F.2d 128, 133 (5th Cir.1990).[14]

As the Fifth Circuit recognized, the substitution provision of the FELRTCA consti-

---

**12.** The complaint makes the following general allegations regarding Behrens and the other defendants:

> 25. Pelletier is informed and believes and on that basis alleges that Defendants, and each of them, have made and continue to make a concerted effort to prevent Pelletier from securing employment in the financial institutions industry.
>
> 26. Pelletier is informed and believes and on that basis alleges that the Defendants have acted in concert with each other, and with others, and have prevented and continue to prevent him from securing any gainful employment in the savings and loan and related financial institutions industries.
>
> 27. Defendants' actions have created, and continue to create, a false and damaging impression about Pelletier in the savings and

loan industry with respect to Pelletier's abilities, his performance and his honesty.

**13.** In his brief, Pelletier argues that Behrens is a private party, and therefore not eligible for qualified immunity from liability in any event. However, Pelletier later concedes that Behrens was an agent of the FHLBB and FSLIC. We think it is clear that when a duly designated Supervisory Agent for the FHLBB and FSLIC discharges duties for those agencies, he is acting as a federal employee. *Saratoga Savings & Loan Ass'n v. Federal Home Loan Bank of San Francisco,* 724 F.Supp. 683, 685 (N.D.Cal.1989).

**14.** It appears that the Second Circuit would also reach this conclusion. *Yalkut v. Gemignani,* 873 F.2d 31, 34 (2d Cir.1989). The FELRTCA was enacted during the pendency of the *Yalkut* defendants' interlocutory appeal from the dis-

tutes a congressional grant of immunity *from suit* to eligible federal employees. *Id.; see also* H.R.Rep. No. 700, 100th Cong., 2d Sess. 2–4 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5945, 5945–47 (the FELRTCA is intended to provide federal employees with absolute immunity from suit for common law torts committed within the scope of their employment). A denial of substitution is thus analogous to a denial of qualified immunity. In both cases, the entitlement at issue is "like an absolute immunity [in that] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. at 526, 105 S.Ct. at 2815. Thus, the third prong of the *Cohen* test is met. Congress's clearly expressed intent to create an entitlement to immunity from suit virtually dictates the conclusion that a denial of substitution under the FELRTCA constitutes an appealable "final" order.

A denial of substitution under the FELRTCA also satisfies the first two prongs of the *Cohen* test. To issue such an order, the district court must review the certification issued by the Attorney General in light of specific documentary proof provided by the parties. *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir.1991). The order thus operates as a conclusive determination of the scope of employment issue. In addition, the scope of employment inquiry is entirely separable from the question whether liability in tort does or does not attach for the challenged conduct.

Pelletier argues that a denial of substitution is not immediately appealable because the scope of employment inquiry does not present a pure question of law but rather a mixed question of law and fact. *Meridian*, 939 F.2d at 745. *Cohen*, however, imposes no such requirement. As discussed above, under *Cohen* the issue appealed need only be separable from the merits of the underlying action. The rule established in *Mitchell v. Forsyth*, 472 U.S. at 528 & n. 9,

105 S.Ct. at 2816 n. 9, that a denial of qualified immunity is immediately appealable only to the extent that the appeal presents a question of law, reflects the fact that the order appealed from in *Mitchell* was a denial of *summary judgment.* Put differently, *Mitchell* simply stands for the proposition that a party appealing the denial of qualified immunity may not take advantage of the *Cohen* collateral order doctrine to circumvent the rules that govern summary judgment motions generally.

We note that the case before us presents a question of law—namely, whether the district court applied the proper test to determine whether Behrens was eligible for substitution—and that there do not appear to be any factual disputes regarding the scope of Behrens's *employment. See infra* Part III(B).[15] However, we also note that in ruling on a motion for substitution under the FELRTCA, the district court is authorized to hold an evidentiary hearing and resolve disputed questions of fact. *Meridian,* 939 F.2d at 745. An order granting or denying substitution is, in essence, a determination of subject matter jurisdiction to sue the United States under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2674. When ruling on a challenge to subject matter jurisdiction, a district court ordinarily may hear evidence and resolve factual disputes relating to jurisdiction prior to trial. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill Publishing Co. v. General Tel. Corp.*, 594 F.2d 730, 733 (9th Cir.1979)). The questions of whether and when a district court may decline to rule on a motion for substitution prior to trial are not before us, and we will not address them here.

In short, a denial of substitution under the FELRTCA falls squarely within the class of immediately appealable orders defined by the *Cohen* collateral order doctrine. Accordingly, we proceed to consider the merits of Behrens's appeal.

---

trict court's denial of their motion for summary judgment based on absolute official immunity. *Id.* at 34. Although *Yalkut* did not involve a motion for substitution under the FELRTCA, the Second Circuit applied the provisions of the FELRTCA retroactively in evaluating the defendants' entitlement to immunity. *Id.*

**15.** As we demonstrate in Part III(B), the factual dispute that exists between the parties regarding the scope of Behrens's *authority* is irrelevant.

## B

The FELRTCA provides that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose ... the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). A scope of employment certification issued by the Attorney General is subject to *de novo* review by the district court. *Meridian*, 939 F.2d at 745. In such a case, we review the district court's scope of employment determination *de novo*. *Id.*

The district court based its conclusion that Behrens was not acting within the scope of his employment as a Supervisory Agent of the FHLBB on the language of the FHLBB regulations then in force. The court found that under the FHLBB regulations governing supervisory agents, neither Behrens nor his Principal Supervisory Agent, James Cirona, had the authority to order that Pelletier be removed from his position as managing officer of Pioneer. 12 C.F.R. § 501.11 (1989), *repealed by* 54 Fed.Reg. 49,420 (1989).[16] In addition, the court found no evidence that the FHLBB had delegated that authority to Behrens or to Cirona by any other means. Because removal of Pelletier from his position was not within the scope of Behrens's *authority* as defined by regulation, the court concluded that Behrens was not acting within the scope of his *employment*. That conclusion confuses the narrow sense in which "scope of employment" was understood for purposes of pre-FELRTCA doctrines of of-

ficial immunity with the broader sense in which that term is used in the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, of which the FELRTCA is a part.

Before the enactment of the FELRTCA established a statutory right to substitution, federal employees who were sued in tort for injuries arising out of conduct within the scope of their employment could attempt to assert the common law defense of official immunity. That defense shielded only conduct "within the outer perimeter" of the official's designated duties. *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959) (plurality opinion). Conduct outside the scope of an official's authority, as defined by statute, regulation, or established practice, was unprotected. *Id.* at 572, 79 S.Ct. at 1340 (" 'The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers....' ") (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949)).

In *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), the Court substantially narrowed the scope of the official immunity defense, holding that federal employees could not assert immunity from liability for common law torts unless the conduct at issue was discretionary in nature. *Id.* at 297–98, 108 S.Ct. at 584–85. In order to restore immunity to federal employees who perform nondiscretionary functions, Congress enacted the FELRTCA, popularly known as the Westfall Act. H.R.Rep. No. 700, 100th Cong., 2d Sess. 3–4 (1988), *reprinted in* 1988 U.S.C.C.A.N.

---

**16.** The regulation authorized the Principal Supervisory Agent and any duly designated Supervisory Agents to act in a purely advisory capacity to the FHLBB:

(c) He shall confer and negotiate, pursuant to instructions from the Board and the Federal Savings and Loan Insurance Corporation ... with applicants and with officers, directors, members, or creditors of applicant institutions....

(d) He shall see that Federal savings and loan associations and other insured institutions in his bank district submit to him for his consideration such matters ... as are required to be acted upon by the Board or the Federal Savings and Loan Insurance Corpora-

tion by statute, rule, or regulation. When these matters come to the attention of said agent he shall, after giving them due consideration, submit them, together with such supplemental information as may be available to him, to the Board with his recommendations thereon.

. . . . .

(g) Such agent shall forward promptly to the Board copies of all transmittal and other supervisory letters.... The Board will consider the documents so forwarded and advise the said agent concerning such matters as may appear to be appropriate. *Id.*

5945, 5946–47. The FELRTCA amended the FTCA to "remove the potential personal liability of Federal employees for common law torts committed within the scope of their employment, and ... instead provide that the exclusive remedy for such torts is through an action against the United States under the Federal Tort Claims Act." *Id.* at 4, *reprinted in* 1988 U.S.C.C.A.N. 5945, 5947.

Under the FTCA, an individual who has suffered an injury cognizable in tort as a result of the conduct of a federal employee may bring suit against the United States if that employee was "acting within the scope of his office or employment." *Id.* §§ 1346(b), 2674. The question whether a federal employee whose allegedly tortious conduct is the subject of a lawsuit under the FTCA was "acting within the scope of his office or employment" at the time of the injury is to be answered according to the principles of *respondeat superior* of the state in which the alleged tort occurred. *Proietti v. Civiletti,* 603 F.2d 88, 90 (9th Cir.1979) (citing *Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam)); *see also Nasuti v. Scannell,* 906 F.2d 802, 805 n. 3 (1st Cir. 1990).

 The FELRTCA accords a right of substitution to any federal employee sued in tort who was "acting within the scope of his office or employment" when the allegedly tortious conduct occurred. 28 U.S.C. § 2679(d)(1). Logic and common sense dictate that the phrase "acting within the scope of his office or employment" be given the same meaning for purposes of the substitution provision of the FELRTCA as it is for purposes of the FTCA generally, and every other circuit to consider the issue has so held. *Sullivan v. Freeman,* 944 F.2d 334, 336 (7th Cir.1991); *Johnson v. Carter,* 939 F.2d 180, 183 (4th Cir.), *vacated and reh'g en banc granted* (4th Cir. Oct. 9, 1991); *Arbour v. Jenkins,* 903 F.2d 416, 421–22 (6th Cir.1990); *Yalkut v. Gemignani,* 873 F.2d 31, 34 (2d Cir.1989). In addition, the legislative history of the FELRTCA clearly establishes that Congress intended the principles of *respondeat superior* that govern FTCA actions to con-

trol decisions regarding entitlement to substitution. H.R.Rep. No. 700, 100th Cong., 2d Sess. 5–6 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5945, 5949. We conclude that the question of Behrens's entitlement to substitution is controlled by California principles of *respondeat superior.* It is to those principles that we now turn.

Under California law, the determinative factor in establishing vicarious liability under the doctrine of *respondeat superior* is not whether the employee's act was authorized, but whether the act was committed in the course of carrying out the employer's business. *Perez v. Van Groningen & Sons, Inc.,* 41 Cal.3d 962, 227 Cal.Rptr. 106, 109, 719 P.2d 676, 679 (1986). Vicarious liability thus may attach for unauthorized, or even prohibited, conduct, if the risk of that conduct is " 'one "that may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the employer.' " *Id.,* 227 Cal.Rptr. at 108, 719 P.2d at 678 (quoting *Rodgers v. Kemper Constr. Co.,* 50 Cal.App.3d 608, 619, 124 Cal.Rptr. 143 (1975) (citations omitted)); *see also Liu v. Republic of China,* 892 F.2d 1419, 1427 (9th Cir.1989) ("California follows the 'enterprise theory' of liability."), *cert. dismissed,* —— U.S. ——, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990); *Joseph v. Office of Consulate General of Nigeria,* 830 F.2d 1018, 1025–26 (9th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). By contrast, vicarious liability does not attach if the employee "has substantially deviated from his duties for personal purposes." *Perez,* 719 P.2d at 679 (quoting *Hinman v. Westinghouse Elec. Co.,* 2 Cal.3d 956, 88 Cal.Rptr. 188, 471 P.2d 988, 990 (1970)).

Applying the rule set forth in *Perez* to the facts of the case before us, we think it is clear that, as a matter of law, Behrens was acting within the scope of his employment when he wrote the letter requesting Pelletier's resignation. Although Behrens was not authorized to remove Pelletier from his position as managing officer, his decision to ask Pioneer to do so did not constitute a deviation from his duties for personal purposes. Rather, Behrens wrote the letter to further his employer's "busi-

ness"—namely, that of ensuring that the management of newly chartered federal savings and loan institutions was entrusted to competent, reliable, and trustworthy individuals. Taking the allegations in Pelletier's complaint to be true, *see supra* Part II(C), it is equally clear that, notwithstanding the absence of any similar requirement for regulatory approval with respect to most executive level positions in the savings and loan industry, any subsequent communications that Behrens may have had with potential employers regarding Pelletier's qualifications were also within the scope of Behrens's employment. The "business" of the FHLBB is the supervision of the savings and loan industry to ensure regulatory compliance, and the character and conduct of industry executives are matters within its legitimate concern regardless of whether or not the employment was initially contingent on the FHLBB's approval. Our conclusion holds even if subsequent communications were made with the intent to cause Pelletier distress. Under California law, vicarious liability attaches for intentional torts committed by an employee so long as the employee was motivated in part by an intent to serve the employer. *Perez*, 719 P.2d at 680; *accord Liu*, 892 F.2d at 1428–29. Accordingly, we conclude that Behrens is entitled to substitution.

## CONCLUSION

For the reasons stated above, we hold that we have jurisdiction to consider both questions raised by Behrens on appeal. We also hold that the district court correctly denied Behrens's motion to dismiss Pelletier's *Bivens* claims on the ground of qualified immunity, but that its refusal to substitute the United States as defendant in Behrens's place as to Pelletier's common law tort claims was error. Pelletier's request for attorneys' fees on appeal is denied.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.