MENDOCINO ENVIRONMENTAL
CENTER, Plaintiff,

Judi Bari, et al., Plaintiffs–Appellees,

v.

MENDOCINO COUNTY, Defendant,

Richard W. Held, Frank Doyle, Jr.,
David R. Williams, John Rikes,
Defendants–Appellants.

No. 93–15144.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 1993.

Decided Jan. 12, 1994.

458

Richard A. Olderman, Frank W. Hunger, Asst. Atty. Gen., Michael J. Yamaguchi, U.S. Atty., Barbara L. Herwig, Dept. of Justice, Washington, DC, for defendants-appellants.

Dennis Cunningham, San Francisco, CA, William M. Simpich, Oakland, CA, for plaintiffs-appellees.

Before: LAY,* THOMPSON, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

FBI Agents Richard W. Held, Frank Doyle, Jr., David R. Williams, and John Rikes appeal the district court's order denying their motion to dismiss certain claims in the *Bivens*[1] action filed against them by Judi Bari and Darryl Cherney. Bari and Cherney were injured when a bomb in Bari's car exploded. Bari and Cherney filed a complaint (thrice amended) against the FBI Agents and numerous California municipalities and their law enforcement officers (State Officers), alleging that all violated a number of their rights under the Federal and State Constitutions.

Both the FBI Agents and the State Officers filed motions to dismiss. They argued, *inter alia*, that they were entitled to qualified immunity and that the complaint failed to satisfy the "heightened pleading standard" applicable in § 1983 and *Bivens* actions against individual officers whose subjective intent is an element of the plaintiff's constitutional tort. *Branch v. Tunnell*, 937 F.2d 1382, 1386 (9th Cir.1991) (*Branch I*). The district court granted the motion with respect to several of Bari and Cherney's claims. With respect to three causes of action against the FBI Agents, however, the district court denied the motion. They filed this timely interlocutory appeal, asserting the district court erred in holding that Bari and Cherney's complaint satisfied the heightened pleading standard. We affirm.

## I

Bari and Cherney are members of Earth First!, an environmental advocacy organization that opposes, *inter alia*, logging practices in Northern California. In February 1990, Earth First! members announced plans for "Redwood Summer," a nonviolent political campaign patterned after the civil rights campaigns in the South during the 1960s; they invited large numbers of young people from across the country to participate in a "Mississippi Summer in the Redwoods," demonstrating, agitating, and organizing against "clear cutting" and other logging industry practices that Earth First! members thought harmful to the environment.

The activities of Earth First!, and the Redwood Summer project in particular, generated considerable opposition and animus among individuals in the logging and timber industry. Bari and Cherney allege that local law enforcement officials in several Northern California counties shared that animus, and that those officials did nothing to protect Bari and Cherney from threats and harassing activities directed against them. As the date for Redwood Summer approached, Bari and Cherney allege that these law enforcement officials formed a "federation or consortium" with one another and with the FBI (which, according to Bari and Cherney, had a preexisting "counterintelligence" investigation of Earth First!) to "disrupt, suppress and neutralize" the program and its organizers.

On May 24, 1990, while Bari and Cherney were engaged in a speaking and concert tour in Oakland, a bomb detonated in Bari's car, severely injuring her and Cherney. Oakland police, working with the FBI, investigated the bombing incident and subsequently arrested Bari and Cherney on charges of transporting explosives. Officers obtained search warrants, and thereafter searched Bari's and Cherney's property and seized certain items.

While the investigation was ongoing, law enforcement officials released to the press information about what they claimed to have discovered. In particular, law enforcement officials disseminated reports that the bomb was located *behind* Bari's seat (thus suggest-

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

ing that she and Cherney knew the bomb was in the car) and that they had retrieved nails from Bari's home that matched nails placed in the explosive device for shrapnel. Bari and Cherney allege that these press releases were made to "smear" them and other Earth First! members as "terrorists and violent fanatics."

Bari and Cherney filed their initial complaint on April 8, 1991. They subsequently amended that complaint on May 21, 1991, adding the FBI Agents as defendants. In response to a consolidated motion to dismiss, Bari and Cherney submitted a second amended complaint. At a status conference attended by all parties, the district court indicated to Bari and Cherney that this second amended complaint was more deficient than was their first and did not grant them leave to file it. Bari and Cherney then submitted a third amended complaint, which the district court granted them leave to file.

The FBI Agents and the State Officers moved to dismiss the third amended complaint on numerous grounds. For purposes of this appeal, the relevant motion is that of the FBI Agents based on their assertion of qualified immunity and Bari and Cherney's inability to meet the heightened pleading standard of *Branch I.* The district court granted that motion with respect to some of Bari and Cherney's claims, but it held that four causes of action against these Agents could proceed to discovery.

The FBI Agents filed a motion for reconsideration. In response to that motion, Bari and Cherney agreed to dismiss their claim against the FBI Agents for alleged violations of the California Constitution. The district court thereafter denied the motion for reconsideration. Hence, three claims remained against the FBI Agents, who then filed this timely appeal.

## II

Bari and Cherney contest our jurisdiction to hear this appeal. They argue that the appeal is untimely, since the State Officers, whose motions to dismiss the district court also denied in part, answered the complaint but are likely to file their own interlocutory

appeal in the event the district court denies their summary judgment motion. Insisting that the FBI Agents' and the State Officers' (predicted) appeals both are "essentially baseless, and only dilatory and oppressive," Bari and Cherney argue that the denial of qualified immunity should not be considered "final" for purposes of *Mitchell v. Forsyth,* 472 U.S. 511, 527, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (order denying qualified immunity is final for purposes of the collateral order doctrine and may be appealed immediately), until the pleadings are closed. This argument fails.

██ *Branch I* makes it clear that the "heightened pleading standard" is part of qualified immunity analysis, and that a district court's denial of a motion to dismiss premised on the inadequacy of a plaintiff's factual allegations in such a case is an immediately-appealable collateral order. *See* 937 F.2d at 1383. The "denial of qualified immunity is an appealable 'final' order ... *regardless* of whether that denial takes the form of a refusal to grant a defendant's motion to dismiss or a denial of summary judgment." *Pelletier v. Federal Home Loan Bank,* 968 F.2d 865, 870 (9th Cir.1992) (emphasis added) (citation omitted). We have refused, however, to allow "an official defendant claiming qualified immunity [to] take advantage of the several *opportunities* for immediate appeal afforded him by bringing repeated pretrial appeals." *Id.* "*One* such interlocutory appeal is all that a government official is entitled to and all that we will entertain." *Id.* at 871 (emphasis added).

██ Contrary to Bari and Cherney's assertion, nothing in *Pelletier* suggests that in a case such as this one, which includes multiple defendants, only a single, consolidated appeal of the qualified immunity question will be allowed. The four FBI Agents have pursued a common defense to the complaint, with all of them asserting the inadequacy of Bari and Cherney's allegations concerning FBI involvement in the purported constitutional violations. The district court conclusively rejected their motion to dismiss on these grounds, and that ruling effectively disposes of these Agents' claim that they are immune from suit. They chose to appeal the

district court's ruling at this time; by doing so, they risk that their appeal on the pleadings might fail, whereas an appeal following discovery and an adverse summary judgment ruling might succeed. *Pelletier* gives them the "right to make that choice." *Id.*

## III

■ We review de novo a district court's dismissal pursuant to Rule 12(b)(6). *Oscar v. University Students Co-op. Ass'n,* 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). We accept as true all allegations of material fact. *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992). The traditional standard for a 12(b)(6) motion is that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ In an opinion filed today, *Branch v. Tunnell,* 14 F.3d 449 (9th Cir.1994) (*Branch II*), we have adhered to our "heightened pleading standard" in a *Bivens* case where the defendant's subjective intent is an element of the plaintiff's constitutional tort. This standard requires Bari and Cherney to "state in their complaint nonconclusory allegations setting forth evidence of unlawful intent. The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity." *Branch I,* 937 F.2d at 1386 (quotation marks omitted).

## IV

The district court denied the FBI Agents' motion to dismiss causes of action based on (1) alleged Fourth Amendment violations for arresting Bari and Cherney without probable cause and unlawfully searching their premis-

es, (2) alleged "chilling" of Bari and Cherney's First Amendment free speech rights by unlawfully arresting them, releasing false accusations about their responsibility for the bombing, and interrogating their associates, and (3) an alleged conspiracy to interfere with Bari and Cherney's First Amendment right to organize.[2] We agree with the district court that all three causes of action— even those which must be evaluated under the heightened pleading standard—survive the FBI Agents' motion.

### A

Bari and Cherney allege that the FBI Agents violated their Fourth Amendment rights in two respects. They assert that these Agents participated in arresting Bari and Cherney without probable cause, and that these Agents supplied information that misled the magistrate in the applications for warrants to search Bari's and Cherney's property. We consider each claim in turn.

### 1

■ Bari and Cherney allege that the FBI Agents, acting in concert with the State Officers, decided to and did arrest Bari and Cherney without probable cause. The FBI Agents argue that the allegations are not pleaded with sufficient particularity, as they fail to identify which individual Agents were involved in the decision to arrest Bari and Cherney and what evidence demonstrates an absence of probable cause. We disagree with the underlying premise of this argument—that the heightened pleadings standard is applicable to a claim of false arrest. The complaint, reviewed under the traditional 12(b)(6) standard, adequately states a claim for relief.

We observed in *Branch I* that a "tension" exists between the qualified immunity defense's focus on "objective reasonableness" and those cases where the constitutional tort "contains a subjective element, such as motive or intent." 937 F.2d at 1385. We adopted the heightened pleading standard to

---

2. The district court also denied the motion with respect to Bari and Cherney's claim that the FBI Agents violated the California Constitution; Bari

and Cherney subsequently dismissed this cause of action against the FBI Agents.

reduce that tension "in cases in which *subjective intent is an element* of a constitutional tort action." *Id.* at 1386 (emphasis added). Where the constitutional tort does not require an inquiry into the defendant's state of mind, however, the heightened pleading standard is inapplicable.

■ The qualified immunity inquiry in unlawful arrest cases is an objective one, focusing on whether "a reasonable officer could have believed that probable cause existed to arrest" the plaintiff. *Hunter v. Bryant,* — U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam); *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1443 (9th Cir. 1991) ("The doctrine of qualified immunity does not require that probable cause to arrest exist."). The defendant's knowledge is relevant, since the objective analysis is focused on a reasonable officer confronted with the "facts and circumstances" actually known to the officer. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993); *Fuller,* 950 F.2d at 1443 (objective reasonableness of the officer's decision to arrest is determined "in light of clearly established law *and the information [the searching officers] possessed* ") (emphasis added).

■ But in contrast to a Fourth Amendment claim of judicial deception, in which a knowingly false statement (or a statement made with reckless disregard for its truth) to the magistrate is an essential element of the plaintiff's claim, *see Branch I,* 937 F.2d at 1387, the principal focus in an unlawful arrest case is on the objective reasonableness of the officer's probable cause determination. *See Caballero v. City of Concord,* 956 F.2d 204, 206 (9th Cir.1992) (" 'An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable [arrest]; nor will an officer's good intentions make an objectively unreasonable [arrest] constitutional.' ") (alterations in original) (quoting *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)). Accordingly, we apply the traditional 12(b)(6) standard to Bari and Cherney's Fourth Amendment claim alleging an unlawful arrest based on an absence of probable cause.

Bari and Cherney allege that the FBI Agents participated both in the decision to arrest them and in the "carrying out" of that decision. Bari and Cherney further allege that the arrest was made "without probable cause," and that all officers involved "knew or should have known the purported bases for believing [Bari and Cherney] guilty were false and insubstantial." Although this latter allegation refers to actual knowledge, the relevant inquiry for qualified immunity purposes is whether, based on the facts allegedly known to the FBI Agents, a reasonable officer would have believed he or she had probable cause to arrest Bari and Cherney.

Bari and Cherney allege the FBI Agents knew the bombing was not accidental, based on "the physical evidence, the risk logic and other factors." This allegation refers to the Agents' purported knowledge that the bomb was located *under* Bari's seat, a fact that would indicate she and Cherney had no knowledge the bomb was in the car.

Accepting these factual assertions as true, Bari and Cherney have stated a claim that a reasonable law enforcement official confronted with this knowledge would have known there was no probable cause to arrest them on charges of transporting an explosive device. The district court correctly denied the FBI Agents' motion to dismiss this claim.

### 2

Bari and Cherney also allege that the FBI Agents participated in an unlawful search of their property and illegally seized certain items belonging to them. The complaint refers to two groups of searches. The first, made "in the wake of the arrest," were searches of Bari's and Cherney's homes. The second search, executed "a month later," was of Bari's home for the purpose of finding nails that matched those used as shrapnel in the bomb. Bari and Cherney allege that the searches and seizures were illegal because the warrants authorizing them were based on knowingly-false affidavits. The affidavits in issue were executed by Oakland Police Sergeants Robert Chenault and Michael Sitterud.

■ *Branch I* controls our analysis of this claim. The heightened pleading standard is applicable to a claim of judicial deception:

> [A] plaintiff's complaint must contain non-conclusory allegations that the defendant knowingly included false statements in the affidavit or did so with reckless disregard. That is, he must [1] "point out specifically the portion of the warrant affidavit that is claimed to be false," and [2] allege some facts tending to show that the defendant was aware or should have been aware of the falsity of those statements. [3] He must also allege that the false statements were "necessary to the finding of probable cause," but without the particularity required of his allegations regarding the defendant's state of mind.

*Branch I*, 937 F.2d at 1387 (citations omitted) (quoting *Franks v. Delaware*, 438 U.S. 154, 156, 171, 98 S.Ct. 2674, 2676, 2684, 57 L.Ed.2d 667 (1978)).

■ Bari and Cherney's complaint meets these requirements. The complaint alleges that the portions of the affidavits averring that the bomb was located behind the front seat and that there was evidence the bomb had been constructed in Bari's home were false. The complaint also alleges that these averments were necessary to the probable cause findings.

As concerns the second *Branch I* requirement, the FBI Agents argue that the complaint alleges neither that they supplied false information to the State Officers who allegedly "concocted" the false affidavits nor that the FBI Agents executed searches pursuant to the affidavits knowing them to be false. The only fact alleged on the face of the complaint concerning the Agents' knowledge is that, at the time of the arrests and the initial searches, they "knew or reasonably should have known from the physical evidence, the risk logic and other factors, that the bombing was no 'accident' which had befallen [Bari and Cherney] on their way to set the bomb in some other place." Because

the complaint is deficient with respect to allegations concerning their involvement in procuring the affidavits, the FBI Agents argue, the district court erred in denying their motion to dismiss this claim.

The district court, while finding that the complaint "makes only the barest allegations of specific falsehoods[,]" and acknowledging that it was "stretch[ing] the law of *Branch* to its limit," found Bari and Cherney's allegations sufficient to meet the heightened pleading standard. We agree.

■ The two warrant affidavits demonstrate that Chenault and Sitterud were relying on information supplied by certain of the FBI Agents.[3] Chenault's affidavit states that he "was advised by ... F.B.I. Agents that the bomb device was on the floor board behind the drivers [sic] seat when it detonated." Chenault also stated that Agent Doyle told him "that a separate bag of nails was discovered in [Bari's car] that are [sic] identical to the nails taped to the explosive device." Sitterud's affidavit attributes all of his information regarding the similarities between nails used in the bomb and nails seized during the initial search of Bari's home to FBI Agent Williams.

The reference in ¶ 23 of the complaint to the FBI Agents' knowledge of the bomb's location, together with Chenault's representation that his information regarding the bomb came from FBI Agents, suffice to meet our circuit's heightened pleading standard. It's true that the Chenault affidavit attributes information to "F.B.I. Agents" without identifying them by name. But *which* Agents among the four named as defendants told Chenault "that the bomb device was on the floor board behind the driver's seat" is a question only the FBI Agents can answer. *See Branch I,* 937 F.2d at 1386–87 (rejecting D.C. Circuit's requirement that § 1983 or *Bivens* plaintiff meet heightened pleading standard with *direct,* as opposed to circumstantial, evidence of defendant's intent because such evidence "is largely within the

---

**3.** Although Bari and Cherney did not attach either warrant affidavit to their complaint, the complaint specifically refers to these documents and the Federal defendants do not challenge their authenticity. For reasons stated in our *Branch II* opinion, 14 F.3d at 453–54, these documents may be considered in assessing the FBI Agents' challenge to the complaint.

control of the defendant and often can be obtained only through discovery").

We therefore affirm the district court's order denying the FBI Agents' motion to dismiss this claim.

**B**

In their free speech claim, Bari and Cherney allege that the "concerted conduct" of the FBI Agents and State Officers "in connection with the arrest, and the attendant defamatory public accusation against [Bari and Cherney], was intended to and did wrongfully disrupt, chill, punish[,] 'neutralize' and otherwise infringe upon" Bari and Cherney's rights. The district court held that, although this claim was "couched in the barest of terms," it survived the FBI Agents' motion to dismiss.

The FBI Agents argue that the complaint is not sufficiently specific with respect to allegations of their intent to deprive Bari and Cherney of their free speech rights. This argument fails.

 Governmental "action designed to retaliate against and chill political expression strikes at the heart of the First Amendment." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. ·928, 93 L.Ed.2d 979 (1987). "Accordingly, the victim of such action is entitled to sue the responsible" officers.[4] *Id.* A plaintiff "may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives." *Id.* However, where a plaintiff "allege[s] discrete acts of police surveillance and intimidation directed solely at silencing" her or him, a civil rights claim will lie. *Id.* The defendant's intent *is* an element of the claim. *See Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir.1989) (to avoid dismissal of claim for retaliatory firing, plaintiff need only allege that defendant's conduct "was motivated by an intent to retaliate for [the plaintiff's] exercise of constitutionally protected rights"), *cert. denied*, 494 U.S. 1028, 110 S.Ct. 1475, 108 L.Ed.2d 612 *and*

*cert. denied*, 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990). The heightened pleading standard therefore applies with respect to Bari and Cherney's allegations of the FBI Agents' intent. *Branch I*, 937 F.2d at 1386.

 The complaint contains specific factual allegations that tend to show the FBI Agents intended to interfere with Bari and Cherney's First Amendment rights to demonstrate and communicate their message about the environment. Bari and Cherney allege that, prior to the announcement of Redwood Summer, the FBI had pursued baseless investigations of other Earth First! members, and that the FBI Agents supplied false information to support Bari and Cherney's arrest in an effort to "expose, disrupt, misdirect, discredit and otherwise neutralize" their advocacy activities. Bari and Cherney also allege that the particular FBI Agents who are defendants in this case "maintained a constitutionally impermissible, politically-based animus, not based in any legitimate law enforcement interest, against [Bari and Cherney]," and that the Agents "were alert for opportunities to discredit and disrupt protected activities in protest of logging company operations."

As factual evidence of the FBI Agents' animus toward their exercise of First Amendment rights, Bari and Cherney rely on those allegations that support their claims of unlawful arrests and illegal searches. Essentially, Bari and Cherney allege that the FBI Agents participated in these constitutional violations to further their goal of derailing Bari and Cherney's free speech rights. Because Bari and Cherney's complaint meets the heightened pleading standard with respect to the FBI Agents' intent to participate in the illegal searches, we affirm the district court's ruling that the complaint also states this First Amendment claim in accordance with the heightened pleading standard.

---

4. This passage is taken from our discussion of a § 1983 claim. We also held in *Gibson* that a *Bivens* plaintiff could maintain a First Amendment claim against a federal official. 781 F.2d at 1342.

### C

In their § 1983 conspiracy claim, Bari and Cherney allege that the FBI Agents unlawfully conspired with the State Officers to interfere with Bari and Cherney's First Amendment right to organize and recruit new members to Earth First!. The district court concluded that, although Bari and Cherney's claim against the FBI Agents was stated "in a flawed manner and with minimal particularity," the allegations survived the motion to dismiss. The FBI Agents argue that the complaint does not contain sufficient factual allegations to tie them to the alleged conspiracy. *See Gibson*, 781 F.2d at 1343 ("Federal officers acting under federal authority are immune from suit under section 1983 unless the state or its agents significantly participated in the challenged activity."). We disagree.

Bari and Cherney allege a "Meeting of the Minds among" all defendants, Federal and State, to "chill" their right to organize and recruit new members for political action. Bari and Cherney allege that the conspiracy had as its object that Redwood Summer would be perceived as a violent, lawless activity, thereby deterring nonviolent activists from attending; that an atmosphere of conflict would prevail in the Northern California counties where Bari, Cherney, and other Earth First! members were preparing for Redwood Summer; and that Earth First! members would be portrayed in the media "as dangerous extremists, involved with bombs and guns and tree-spiking."

Bari and Cherney allege that the FBI Agents and State Officers engaged in the following "overt acts" in furtherance of this last purported "object" of the conspiracy: the false arrests of Bari and Cherney; the statements the FBI Agents subsequently made to the press about Bari and Cherney's involvement in the construction and transportation of a bomb; and the fraudulently-procured search warrants. Bari and Cherney stated their allegations as to these "overt acts" (which are indicia of the FBI Agents' intent to deprive Bari and Cherney of their constitutional rights) with sufficient particularity to withstand a motion to dismiss. The district court was correct to deny the motion with respect to this claim for relief.

**AFFIRMED.**