**Carol VAN STRUM; Paul E. Merrell, Plaintiffs–Appellants,**

v.

**John C. LAWN, et al., Defendants–Appellees.**

**No. 89–35656.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1990.

Decided March 5, 1991.

As Amended April 11, 1991.

Before FLETCHER, FERGUSON and FERNANDEZ, Circuit Judges.

FLETCHER, Circuit Judge:

Appellants Carol Van Strum and Paul Merrell appeal the district court's dismissal of their suit against a number of federal and county officials. Appellants assert that these officials subjected appellants' home to frequent and harassing helicopter and fixed-wing aircraft overflights in retaliation for appellants' public opposition to the use of herbicides on national forest land. In the court below, appellants pursued *Bivens* claims (*Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)), section 1983 claims (42 U.S.C. § 1983), and NEPA claims (the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq.). The district court granted appellees' motions to dismiss and for summary judgment on all counts. The majority of the issues presented in this case are resolved in an unpublished memorandum disposition pursuant to Ninth Circuit Rule 36–3. We decide the statute of limitations question raised by appellants' *Bivens* claims in this opinion.

I.

Appellants, husband and wife, reside on land abutting the Siuslaw National Forest in Oregon. The parcel is approximately 28 acres in size. The national forest land is managed by the United States Forest Service (USFS). In the early 1980's, the Drug Enforcement Administration (DEA) implemented a program to eradicate cannabis on federal lands. As part of this program, the DEA, in cooperation with the USFS and Lincoln County officials implemented a surveillance operation involving both fixed-wing aircraft and helicopters to detect the growth of cannabis. Appellants contend that under the guise of the surveillance program, appellees, various employees of the DEA, the USFS, and the county, engaged in a conspiracy to punish and deter appellants from their anti-herbicide activity. They assert that on a number of occa-

Ralph A. Bradley, Bradley & Gordon, Eugene, Or., for plaintiffs-appellants.

Katherine S. Gruenbeck, Jeffrey P. Kehne, U.S. Dept. of Justice, Washington, D.C., and Robert Franz, Eugene, Or., for defendants-appellees.

sions beginning in 1982 appellees have flown fixed-wing aircraft and helicopters at low altitudes near their house resulting in damage to their crops and livestock and causing them considerable mental and emotional distress.

Appellants filed suit on August 22, 1985. On ruling on appellees' motion for summary judgment, the district court held that the applicable statute of limitations provision for both appellants' *Bivens* and § 1983 claims is O.R.S. 12.110(1), Oregon's two-year personal injury statute of limitations provision. It therefore held that incidents occurring before August 22, 1983 were not actionable. Appellants contest that ruling, arguing that the court should have applied Oregon's "catch-all" statute of limitations provision, O.R.S. 12.140, which provides for a ten-year statute of limitations.

The district court based its decision of the applicable statute of limitations on *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), which determined the applicable statute of limitations for claims pursuant to 42 U.S.C. § 1983. The district court did not consider the question of whether *Bivens* actions should be treated differently from § 1983 actions and, therefore, whether *Wilson* properly applied. Moreover, the court dismissed the possibility that application of *Wilson* on the facts of this case raised issues of retroactivity, requiring an analysis of the factors identified in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). We now consider both of these questions.

## II.

█ In *Wilson,* the Supreme Court addressed the question of the appropriate statute of limitations to be applied to § 1983 actions. Congress has not established a specific time limitation for § 1983, but instead, pursuant to 42 U.S.C. § 1988, has directed adoption of state limitations if they are not inconsistent with federal law. *Wilson* determined that, in choosing the relevant state limitation, all § 1983 claims should be characterized in the same way,

regardless of the varying factual circumstances and legal theories presented in each case. Furthermore, *Wilson* found that the state statute of limitations for personal injury was the choice that best effectuated § 1983's objectives.

The *Wilson* decision did not address whether the statute of limitations for personal injury should also apply to *Bivens* actions, those actions for constitutional violations brought directly under the Constitution. Prior to the Supreme Court's decision in *Wilson,* this circuit did not always apply the same statute of limitations in both types of actions. In *Marshall v. Kleppe,* 637 F.2d 1217 (9th Cir.1980), we specifically rejected the application of California's statute of limitations applicable to § 1983 actions to claims against federal officials brought directly under the Constitution. We deemed the fundamental inquiry in determining the statute of limitations for both § 1983 and *Bivens* claims to be the same: what statute of limitations applies to the most analogous state statute? *Id.* at 1222. However, we found that the result of this inquiry differed because § 1983 actions brought in California were most analogous to "liabilit[ies] created by statute," *id.,* at 1223 (quoting Cal.Code Civ.Pro § 338(1)), which were governed by a specific California limitations provision. We rejected applying that limitations period to constitutional tort actions because "[p]ut simply, the Constitution is not a statute." *Id.* Instead, we determined that the applicable statute-of-limitations period for *Bivens* actions brought in California was governed by that state's "catch-all statute." *Id.* at 1224. Thus, were *Marshall* to govern the action at bar, the applicable statute of limitations for *Bivens* claims would likely be governed by Oregon's catch-all provision, O.R.S. 12.140, which provides that "[a]n action for any cause not otherwise provided for shall be commenced within 10 years."

This circuit has not yet considered the issue of whether *Wilson* affects our holding in *Marshall.*[1] At first blush, *Wilson*

---

1. We recognized in *Gibson v. United States,* 781 F.2d 1334, 1342 n. 5 (9th Cir.1986), *cert. denied,*     479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987) that *Wilson's* analysis "may require a

appears not to apply because it expressly bases its determination of § 1983's statute of limitations on principles of statutory construction inapplicable to *Bivens* actions. *Wilson,* 471 U.S. at 268, 105 S.Ct. at 1942. However, on a closer reading of the opinion, it is clear that the Supreme Court based its holding in *Wilson,* not on either the text or legislative history of § 1983 or § 1988, but on the *imputation* of purposes to the 1871 Congress that enacted §§ 1983 and 1988 based on practical concerns about judicial administration of that statute.[2] *See Bieneman v. City of Chicago,* 864 F.2d 463, 469 (7th Cir.1988) ("[*Wilson*] do[es] not depend on § 1988. Nothing in the text or history of that statute speaks to the question. The Court had to devise its own rule, and it made a practical choice for compelling reasons."), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2099, 2100, 104 L.Ed.2d 661 (1989).

In actuality, the Supreme Court's analysis in *Wilson* reflects three different concerns. First, the Court sought a uniform, generic, easily applicable limitations period within each state. In the Court's words, "The experience of the courts that have predicated their choice of the correct statute of limitations on an analysis of the particular facts of each claim demonstrates that their approach inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of § 1983." *Id.* at 272, 105 S.Ct. at 1945. Second, it considered the need for a limitations period that would safeguard the rights of civil rights litigants, determining that "[i]t is most unlikely that the period of limitations applicable to [personal injury] claims ever was, or ever would be, fixed in a way that would discriminate against federal claims." *Id.* at 279, 105 S.Ct. at 1949. Third, the Court determined that the personal injury statute of limitations best emphasized the personal nature of constitutional wrongs. *Id.* at 277–78, 105 S.Ct. at 1947–48. The *Wilson* Court explicitly rejected the notion that limitations periods for rights granted by statute should apply because, even though § 1983 is a statute, it is remedial and not substantive. *Id.* at 278, 105 S.Ct. at 1948. It explicitly held that the substantive force of § 1983 comes from the Constitution and in particular from its provisions granting rights to *persons* independent of

---

re-examination of *Marshall.*" We declined to make such a reexamination at that time on the ground that the plaintiffs in that case had filed suit before *Wilson* was decided and "we would not apply a shorter statute of limitations retroactively to bar claims such as plaintiffs' that were timely when filed." *Id.*

Similarly, in *Johnston v. Horne,* 875 F.2d 1415, 1424 (9th Cir.1989), citing *Gibson,* we applied a Washington catch-all statute of limitations provision to the plaintiff's *Bivens* action without addressing the issue of whether *Wilson* required application of a different statute of limitations. Like the plaintiffs in *Gibson,* the plaintiff in *Johnston* filed suit well before the Supreme Court issued *Wilson,* and his suit was therefore timely when it was filed.

Moreover, no reason existed to address the application of *Wilson* in *Johnston* as the applicable statute of limitations provision would have been the same under either the *Wilson* or *Marshall* rule. Under *Marshall,* the applicable statute of limitations provision is Wash.Rev.Code § 4.16.080(2). *See Johnston,* 875 F.2d at 1424. That provision provides a three-year statute of limitations for "any other injury to the person or rights of another not hereinafter enumerated." As *Wilson* directs application of the statute of limitations applicable to personal injury, section 4.16.080(2), which the Supreme Court of Washington has declared "applies to causes of action claiming both direct and indirect injuries to the person or rights of another," would also apply under *Wilson. See Stenberg v. Pacific Power & Light Co.,* 104 Wash.2d 710, 709 P.2d 793, 794 (1985).

Thus, while in *Johnston,* 875 F.2d at 1424, we referred to the statute as a "residual" statute of limitations, it is, in fact, Washington's general personal injury statute of limitations and "residual" should be taken in that sense. *See Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).

2. *See, e.g., Wilson,* 471 U.S. at 274–275, 105 S.Ct. at 1946 ("There is no reason to believe Congress *would* have sanctioned this interpretation ..."); at 275, 105 S.Ct. at 1946 ("When § 1983 was enacted, it is unlikely that Congress actually foresaw the wide diversity of claims that the new remedy would embrace"); at 277, 105 S.Ct. at 1947 ("Among the potential analogies, Congress unquestionably *would have considered* the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury ..."); at 279, 105 S.Ct. at 1948 ("Finally, we are satisfied that Congress *would not have characterized* § 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials") (emphasis added).

what a legislature might choose to grant them. *Id.* at 278–279, 105 S.Ct. at 1948–49.

All three of these concerns are implicated with equal force in *Bivens* actions. Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*. Like § 1983 actions, the purposes of *Bivens* actions are best served through a uniform, easily applicable limitations period that is unlikely to discriminate against interests protected by the Constitution. Moreover, the rationale for applying the statute of limitations for personal injury in order properly to describe the personal nature of the wrong applies with even greater force to *Bivens* actions, which arise solely from the provisions of the Constitution protecting personal rights.

We are further prompted to apply *Wilson* to claims invoking the Constitution directly by a practical concern. In some suits, as in the one at hand, a plaintiff may choose to sue certain defendants interchangeably under § 1983 or directly under the Constitution. As the Seventh Circuit stated in determining to apply *Wilson* to direct suits under the Constitution:

> There is no reason to have a different period of limitations, and a strong reason not to: any difference would give the plaintiff an incentive to pick whichever jurisdiction provided the longer period, recreating the uncertainty that the Supreme Court sought to eliminate. We conclude, therefore, that there should be a single period of limitations for all suits in which the Constitution supplies the remedy.

*Bieneman,* 864 F.2d at 469. We agree, and follow the position adopted by the Seventh Circuit, as well as the Second and Sixth Circuits. *See Chin v. Bowen,* 833 F.2d 21, 23–24 (2d Cir.1987); *McSurely v. Hutchison,* 823 F.2d 1002, 1004–1005 (6th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1107, 99 L.Ed.2d 269 (1988). Accordingly, we hold that the personal injury statute of limitations properly applies to *Bivens* claims.

## III.

■ We must next determine whether Oregon's two-year personal injury statute of limitations should be applied to bar appellants' *Bivens* claims in this case. Appellants filed their suit more than three years after some of their claims accrued and five months after the decision issued in *Wilson.* They contend, however, that at least until *Wilson,* they believed that the proper statute of limitations to apply, as dictated by *Marshall,* was Oregon's ten-year general catch-all provision. Accordingly, appellants argue that their claims should not be barred.

In *Usher v. City of Los Angeles,* 828 F.2d 556, 558–561 (9th Cir.1987), we addressed this same issue in the context of a § 1983 suit. In that case, we considered whether to apply *Wilson* to a § 1983 cause of action that arose prior to the date of the *Wilson* decision but was not filed until after *Wilson* was issued. In that case, too, the cause of action would have been timely filed under application of the pre-*Wilson* statute of limitations but would be barred under the shortened statute of limitations imposed by *Wilson.* To resolve the issue, we considered the analysis set out in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), in which the Supreme Court laid out three factors that a court must consider in determining whether to apply a newly formulated rule retroactively: "(1) whether the decision establishes a new principle of law; (2) whether retroactive application will further or retard the purposes of the rule in question; and (3) whether applying the new decision will produce substantial inequitable results." *Barina v. Gulf Trading and Transp. Co.,* 726 F.2d 560, 563 (9th Cir. 1984) (applying *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355). We determined in *Usher* that all three factors weighed against application of *Wilson* to the facts presented in that case.

First, we noted that *Wilson* interposed the one-year statute of limitations for personal injury claims in place of the circuit's longstanding rule that § 1983 actions filed in California were subject to a three-year

statute of limitations. We found that it therefore marked a clear break from settled circuit authority. Second, we found that retroactive application would retard one of the purposes of the new rule, namely, the safeguarding of the rights of federal civil rights litigants. We further stated that it would neither further nor retard the other purposes of the *Wilson* rule as this circuit's clear enunciation of the previous rule had also served the goals of achieving certainty and uniformity in litigation. Third, we found that application of the final *Chevron* factor weighed against retroactive application, for it would yield substantial inequitable results to hold that the plaintiff "slept on his rights" where the plaintiff had no advance notice of the change announced in *Wilson* and such change did not unduly disadvantage the defendants. *Id.* at 560.

Applying the *Chevron* analysis to the case at bar, we find that, taken as a whole, *Usher* counsels against retroactive application of *Wilson*. The application of the first *Chevron* factor, consideration of whether *Wilson* established a new principle of law, clearly militates against retroactive application of the *Wilson* rule. Our decision in *Marshall* all but foreclosed the possibility that anything other than Oregon's 10–year "catch-all" provision would be applied to appellants' *Bivens* claims. *Wilson*, then, clearly broke with precedent and established a new principle of law.

Application of the second *Chevron* factor, whether retroactive application of *Wilson* would further or retard the purposes of the rule, produces less clear results. As stated in *Usher*, retroactive application of the *Wilson* rule would retard the safeguarding of the rights of federal civil rights litigants, by barring some litigants from bringing claims. It would neither further nor retard *Wilson's* goal of ease and uniformity in choosing a statute of limitations as this circuit's approach to the statute-of-limitations question before *Wilson* was to search for a single, generic statute within each state and therefore to provide uniformity and certainty. *See Marshall v. Kleppe*, 637 F.2d 1217 (9th Cir.1980). Finally, application of the pre-

*Wilson* statute of limitations derived from the state's catch-all provision would not appear to capture the personal nature of the wrongs suffered as well as the personal injury provision. On balance, however, we believe that the Supreme Court intended to place the safeguarding of federal rights above the goal of simply finding a statute of limitations that best characterizes them.

Consideration of the third *Chevron* factor—whether applying the new decision will produce substantial inequitable results—also militates against retroactive application in this case. "[I]t would yield 'substantial inequitable results' to hold that [appellants] 'slept on [their] rights' at a time when [they] could not have known the time limitation that the law imposed upon [them]." *Gibson*, 781 F.2d at 1339 (quoting *Chevron*, 404 U.S. at 108, 92 S.Ct. at 356) (citation omitted). As we stated in *Usher*, it should make no difference whether one plaintiff fortuitously filed before *Wilson* and another unfortuitously filed after when neither knew, nor could have known, that the Supreme Court was soon to change the applicable statute of limitations. *Usher*, 828 F.2d at 560. Moreover, appellees have not shown they would be prejudiced by the enforcement of the rule prevailing at the time of their alleged wrongful acts. *See id.; Gibson*, 781 F.2d at 1339.

■ Accordingly, as in *Usher*, the application of the *Chevron* factors weighs heavily against applying *Wilson* retroactively in the case of *Bivens* claims arising prior to *Wilson*, where the effect of that application would be to shorten the limitations period. Thus, Oregon litigants who filed *Bivens* claims before *Wilson* are not time-barred for claims arising from injuries occurring within ten-years of the filing date. Litigants filing after *Wilson* must file within ten years of the injury or two years of *Wilson*, whichever came first. *See Usher*, 828 F.2d at 561. As the district court applied *Wilson* to bar claims filed within the applicable statute of limitations,

those claims will be remanded to the district court.

REVERSED AND REMANDED.