**Tommie R. DEES, Plaintiff,**

v.

**CALIFORNIA STATE UNIVERSITY, HAYWARD, et al., Defendants.**

**No. C 96–04245 MEJ.**

United States District Court, N.D. California.

Dec. 10, 1998.

Tommie Dees, Hayward CA, pro se.

Christine Helwick, Lee R. Rydalch, California State University, Office of General Counsel, Long Beach, CA, for Defendants.

## ORDER GRANTING DEPARTMENT OF LABOR'S AND DEPARTMENT OF JUSTICE'S MOTIONS TO DISMISS

JAMES, United States Magistrate Judge.

The Department of Labor Defendants' and the Department of Justice Defendants' motions to dismiss are presently before the Court. After careful review of the parties' papers, Plaintiff's complaint and applicable case law and statutory authority, the Court hereby grants in part the Department of Labor Defendants' and the Department of Justice Defendants' motions to dismiss with prejudice and grants in part the Department of Labor Defendants' and the Department of Justice Defendants' motions to dismiss without prejudice.

## BACKGROUND

From 1976 to 1985, Plaintiff was employed as a groundsworker at California State University, Hayward ("CSU"). In 1983, Plaintiff began experiencing disputes with his supervisors.

On November 15, 1983, CSU determined that Plaintiff was currently unable to carry out the normal duties of his assignment as groundsworker and placed Plaintiff on leave until he could submit a medical release confirming his ability and willingness to perform his assignments under normal working conditions.

Plaintiff eventually exhausted his leave credits and on March 8, 1984, CSU informed Plaintiff that he must be placed on unpaid leave status, return to work or terminate employment, and that inaction would result in termination of his employment. Plaintiff did not respond and Plaintiff was placed on unpaid leave status for an indefinite period of time.

On May 29, 1985, CSU terminated Plaintiff because he was considered absent without authorized leave ("AWOL") since March 1984. CSU notified Plaintiff that he was considered to have automatically resigned from employment because he did not return to his normal assignment with a medical release or request a leave of absence if he was unable to return to work as informed in March 1984.

Plaintiff sought redress in a variety of administrative and legal forums, including the Office of Federal Contract Compliance Programs ("OFCCP") of the United States Department of Labor, challenging CSU's termination of his employment. On November 25, 1985, October 15, 1992 and April 15, 1994, Plaintiff a complaint with the OFCCP. Plaintiff alleged that CSU discriminated against him on the basis of his religion, handicap and veteran status in violation of Executive Order 11246, section 503 of the Rehabilitation Act of 1973 ("section 503") and section 2012 of the Vietnam Era Veterans' Readjustment Assistance Act of 1974 ("VEVRA").

The OFCCP investigated Plaintiff's first complaint, found no violation and closed the complaint. The OFCCP closed Plaintiff's second and third complaints for failure to timely provide additional information. The OFCCP informed Plaintiff of all three determinations and Plaintiff sought reconsideration of the OFCCP's decisions. The national office of the OFCCP upheld the decisions.

Amidst these proceedings, on June 16, 1994, Plaintiff sought an investigation of the OFCCP's actions with the Department of Justice. The Department of Justice informed Plaintiff that it did not have the authority to review the OFCCP's actions and the matter was referred to the DOL. The DOL conducted the internal investigation of the manner in which the OFCCP handled Plaintiff's complaint. On December 20, 1994, the Director of Division of Internal Management Control notified Plaintiff that the DOL had reviewed the OFCCP's actions and found no impropriety in the handling of his complaints.

On November 22, 1996, Plaintiff filed this suit against various agencies and individuals in federal court, including the Department of Labor, the OFCCP, the Secretary of Labor, and nine former and present officials of the Department of Labor in their "official capacity," (*see* Pl.'s Comp. at 66–68), (collectively referred to in this order as the "DOL").[1] Plaintiff also filed this action against the Department of Justice, Janet Reno and ten former and present officials of the Department of Justice in their "official capacity," (*see* Pl.'s Comp. at 70), (collectively referred to in this order as the "DOJ").[2]

Plaintiff alleges that the DOL, in their "official capacity," failed to "affirmatively" investigate Plaintiff's complaints, investigated Plaintiff's complaints in a false and fraudulent manner, unlawfully denied Plaintiff's

complaint and failed to notify Plaintiff in writing of his rights of appeal. (*See* Pl.'s Comp. at 66–68.) Plaintiff also alleges that the DOL defendants conspired with the other defendants in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO") by forcing Plaintiff to accept social security disability benefits by "direct threat of murder, extortion, and fraud." (Pl.'s Comp. at 65–66.)

Plaintiff alleges that the DOJ, in their "official duties," failed to "affirmatively" investigate Plaintiff's charges of harassment, threats and coercion by the DOL. (Pl.'s Comp. at 70–71.) Plaintiff alleges that the DOJ complacently failed to perform their duties as part of a conspiracy. (Pl.'s Comp. at 14.) These allegations are the only grounds for Plaintiff's suit against the DOJ.

The DOL's and the DOJ's motions to dismiss are presently before the Court. The motion to dismiss is made on behalf of the DOL and the DOJ defendants who have been served. It is not presented as to any DOL or DOJ defendants who have not been served and no appearance is being made on their behalf.

## LEGAL STANDARD

A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6), "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984). In considering a motion to dismiss, "[a]ll the allegations of mate-

---

**1.** The named officials include Robert Reich, former Secretary of Labor, Bernard E. Anderson, Assistant Secretary for Employment and Training Administration ("ETA"), J. Griffin Crump, Internal Control Liaison for ETA, Helene H. Haase, Regional Director of the OFCCP, Ron Hiraga, District Director of Regional Operations, Woodrow W. Gilliland, Deputy Regional Director of the OFCCP, Alonzo Salas, Compliance Liaison, Mark Anthony Paschal, former Employment Opportunity Specialist and Joseph M. Hogan, former Assistant Regional Administrator. Robert

Teja, former Compliance Officer, who is deceased, is also named in Plaintiff's complaint. (*See* Pl.'s Comp. at 13.)

**2.** The named officials include Merrily Friedlander, Civil Rights Division Coordination and Review Section, Mr. Payne, Theador R. Nicke, Deval L. Patrick, Rita L. Wilson, the Honorable Stanley A. Weigel, William L. Whittaker, Max Tomasen, Dennis Bilecki and Susan Longo. (*See* Pl.'s Comp. at 2).

rial fact are taken as true and construed in the light most favorable to the non-moving party." *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987) (quoting *Plaine v. McCabe*, 797 F.2d 713, 716–17 (9th Cir.1986)). To grant a motion to dismiss, "it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Id.*

## LEGAL ANALYSIS

### A. *Judicial Review of the OFCCP's Decisions*

The OFCCP is an arm of the DOL responsible for ensuring compliance by federal government contractors with certain equal employment opportunity requirements. The OFCCP administers three distinct equal employment opportunity programs: Executive Order 11246, section 503 and VEVRA. These programs require affirmative action by certain federal contractors and subcontractors. Executive Order 11246 prohibits discrimination in employment on the basis of race, color, creed, national origin and sex; section 503 prohibits discrimination in employment on the basis of a handicap; and VEVRA prohibits discrimination in employment on the basis of Vietnam era or disabled veteran status.

Plaintiff's federal complaint alleges that the OFCCP failed to "enforce" and bring charges against CSU as it was "bound by the law" to do. (Pl.'s Comp at 67.) Plaintiff is seeking judicial review of the OFCCP's decision to close his complaints and forego enforcement proceedings against CSU. The DOL argues that the Court lacks jurisdiction to review the OFCCP's disposition of Plaintiff's complaints under the Administrative Procedure Act ("APA"). The DOL is correct.

#### 1. *Legal Standard*

 Where a statute does not expressly provide for judicial review of an agency's enforcement decisions, the APA governs judicial review of a final agency action. *See* 5 U.S.C. §§ 701–706. Under the APA, final agency action is subject to judicial review if there is no other adequate remedy in court. 5 U.S.C. § 704 ("[a]gency action made reviewable by statute and final agency action

for which there is no other adequate remedy in the court" are subject to judicial review). However, an exception is made for action "committed to agency discretion by law." *Id.* at § 701(a)(2). "Such action is unreviewable for there is simply 'no law to apply.'" *Clementson v. Brock*, 806 F.2d 1402, 1404 (9th Cir.1986).

> [E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely.

*Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985).

 "[A]n agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." *Id.* at 832, 105 S.Ct. 1649. However, an agency's refusal to take enforcement action is "only presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 832–33, 105 S.Ct. 1649.

> If [Congress] has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standard for defining the limits of that discretion, there is 'law to apply' under § 701(a)(2) [of the APA] and courts may require that the agency follow that law; if it has not, then an agency refusal to institute proceedings is a decision 'committed to agency discretion by law' within the meaning of that section.

*Id.* at 834–35, 105 S.Ct. 1649.

In *Chaney*, the Supreme Court found that the Food and Drug Administration's decision to forego enforcement proceedings was not subject to judicial review under the APA and distinguished *Chaney* from its prior ruling in *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). The statute at issue in *Dunlop* provided that "'the Secretary *shall* investigate such complaint and, if he finds probable cause to believe that a

violation ... has occurred ... he *shall* ... bring a civil action....' " *Id.* at 833, 105 S.Ct. 1649 (quoting 29 U.S.C. § 482) (emphasis in original). The Supreme Court found that the statute being administered in *Dunlop* clearly withdrew discretion from the agency and provided guidelines for the exercise of its enforcement power. *Id.* at 834, 105 S.Ct. 1649. The Supreme Court noted that the statute at issue in *Chaney*, however, contained a general provision for enforcement which provided only that " '[t]he Secretary is *authorized* to conduct examinations and investigations ...' " *Id.* at 835, 105 S.Ct. 1649 (emphasis in original). The Supreme Court described this language as permissive compared to the mandatory language it identified in *Dunlop*. *See Id.* at 833–835, 105 S.Ct. 1649. The Supreme Court also noted that "[u]nlike the statute at issue in *Dunlop*, [the statute at issue in *Chaney* ] gives no indication of when an injunction should be sought, ..." *Id.* at 835, 105 S.Ct. 1649. In the latter, there is law to apply; in the former, a refusal to institute proceedings is a decision "committed to agency discretion by law." *See Id.* at 834–35, 105 S.Ct. 1649; APA § 701(a)(2).

### 2. *Final Agency Decision*

■ First, the Court must determine whether the OFCCP's decisions were final agency actions. The OFCCP investigated Plaintiff's first complaint and found no discrimination. The OFCCP closed Plaintiff's second and third complaints because they were incomplete and untimely filed. The OFCCP informed Plaintiff of all three determinations. Plaintiff sought reconsideration of the first and second determinations and sought an internal investigation of the manner in which the OFCCP handled his complaints. Plaintiff did not seek reconsideration of his third complaint. The national office of the OFCCP upheld the OFCCP's regional office's decisions and found no impropriety in the handling of Plaintiff's complaints. It is clear that the OFCCP's determinations at to each of Plaintiff's complaints were final agency actions.

Next, the Court addresses whether the OFCCP's actions are immune from judicial review.

### 3. *Plaintiff's First Complaint*

On November 25, 1985, Plaintiff filed a complaint with the OFCCP alleging that CSU unlawfully harassed and retaliated against Plaintiff in the course of his employment and terminated his employment based on Plaintiff's political position, religion, veteran status and handicapped status in violation of Executive Order 11246, section 503 and VEVRA. The OFCCP's regional office investigated Plaintiff's complaint and found no discrimination based on Plaintiff's religious practices, handicapped status or veteran status. On November 4, 1986, the OFCCP notified Plaintiff of its decision. (*See* Pl.'s Comp. at Ex. 12–8 to 12–14.) On December 7, 1986, Plaintiff sought reconsideration of the OFCCP's decision. On May 4, 1988, after reviewing the request, the national office of the OFCCP informed Plaintiff that the regional office's decision was correct.

■ The Court addresses whether the OFCCP's decision finding no violation of Executive Order 11246, section 503 and VEVRA is "committed to agency discretion by law," *see* 5 U.S.C. § 701(a)(2), by determining whether Congress has provided guidelines in Executive Order 11246, section 503 and VEVRA for the exercise of such authority.

In *Clementson*, the Ninth Circuit Court of Appeals found the OFCCP's decision to forego enforcement action under VEVRA immune from judicial review. *See Clementson*, 806 F.2d at 1404. Thus, Plaintiff cannot seek judicial review of the OFCCP's decision to forego enforcement proceedings under VEVRA.

The Ninth Circuit's analysis in *Clementson* is also applicable to the OFCCP's decision to forego enforcement under Executive Order 11246 and section 503. In *Clementson*, the court first looked to the language of the statute itself and found that VEVRA left the courts with "no law to apply:"

VEVRA states that, after investigation of a section 2012 complaint, OFCCP need only 'take appropriate action in accordance with the terms of the contract and applicable laws and regulations.' 38 U.S.C. § 2012(b). It provides no indication of what 'appropriate action' is; it lists no

factors for OFCCP to consider in making that determination; and it specifies no standards for a court to use in cabining the agency's discretion.

*Clementson,* 806 F.2d at 1404 (quoting 38 U.S.C. § 2012(b)).

The language of Executive Order 11246 and section 503 similarly leaves the Court without guidance. Section 503 provides that after investigation of a complaint, the agency "shall take such actions thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto." 29 U.S.C. § 793(b). The Executive Order provides that the Secretary of Labor "may" receive and investigate complaints or take action "in accordance with such rules, regulations, or orders as the Secretary of labor may issue or adopt, . . ." Executive Order 11246 § 206(b), § 209. Like VEVRA, Executive Order 11246 and section 503 fail to set forth the guidelines or standards by which the courts should follow in reviewing an agency's decisions.

Because Executive Order and section 503 do not provide the guidelines that rebut the presumption, the Court must then determine whether guidelines for the OFCCP's actions are provided in the implementing regulations. *See Clementson,* 806 F.2d at 1404. In *Clementson,* 806 F.2d. at 1404, the court reviewed VEVRA's implementing regulations and found that guidelines did not exist to rebut the presumption and found the agency's decision to forego enforcement action under VEVRA immune from judicial review. The enforcement and complaint procedures found in section 503's implementing regulations are the same as VEVRA's regulations.[3] *See* 41 C.F.R. § 60–250.20 to § 60–250.32, 41 C.F.R. § 60–741.20 to § 60–741.32. Thus, for the same reasons the Ninth Circuit found the OFCCP's decision to forego enforcement proceedings under VEVRA immune from judicial review, this Court finds the OFCCP's decision to forego enforcement proceedings under section 503 also immune from judicial review.

■ While the enforcement and complaint procedures provided in Executive Order 11246's implementing regulations do not con-

tain the same language of VEVRA and Section 503 in all respects, the Ninth Circuit's reasoning in *Clementson* is applicable here as well. The complaint procedures outlined in the Executive Order's regulations are almost identical to VEVRA's regulations. *See* 41 C.F.R. § 60–1.23 to 60–1.24. The Executive Order's implementing regulations governing enforcement procedures, on the other hand, include an additional provision setting forth seven factors the OFCCP may consider in determining a violation. *See Id.* at 60–1.26(a). However, the provision merely state that violations "*may* result in the institution of administrative or judicial enforcement proceedings. . . ." and that "[v]iolations *may* be found based upon, *inter alia,* any of the following [factors] . . ." *Id.* at 60–1.26(a) (emphasis added). Like VEVRA's regulations, the Executive Order's implementing regulations permit the OFCCP to seek judicial relief but the language is clearly permissive, not mandatory and gives wide latitude to the OFCCP in considering any or none of the enumerated factors in making its decision. *See Clementson,* 806 F.2d at 1402. As recognized by the Supreme Court, "an agency decision not to enforce involves a complicated balance of a number of factors which are peculiarly within its expertise." *Chaney,* 470 U.S. at 831, 105 S.Ct. 1649.

> Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. . . . The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of priorities.

*Id.* at 831–32, 105 S.Ct. 1649.

Finally, the Court notes that the Executive Order's regulations also exhibit the "preference for informal methods of complaint resolution rather than litigation" found in VEVRA's implementing regulations which the *Clementson* court considered in finding the

---

3. Section 503 is codified at 41 C.F.R. § 60– 741.20 *et. seq.*

agency's decision unreviewable. *See Clementson*, 806 F.2d at 1404.

While the Court recognizes that Executive Order 11246's regulations provide more guidance than VEVRA and section 503, the regulations fail to provide the Court with a "meaningful standard against which to judge the agency's exercise of discretion." *See Chaney*, 470 U.S. at 830, 105 S.Ct. 1649. The regulations confer enormous discretion to the OFCCP in determining a violation of the Executive Order.

Thus, after review of the language of VEVRA, section 503, Executive Order 11246 and their implementing regulations, the Court finds that Congress has not provided guidelines that rebut the presumption against judicial review of the OFCCP's decisions. The OFCCP's decisions not to institute proceedings under VEVRA, section 503 and Executive Order 11246 are committed to the OFCCP's discretion and are not subject to judicial review.

### 4. *Plaintiff's Second and Third Complaints*

▮ Plaintiff second and third OFCCP complaints alleged a violation of section 503 only. The OFCCP's decision to close Plaintiff's second and third complaints for failure to respond to their request for additional information are also immune from judicial review.

▮ The presumption of unreviewability of agency decision to forego enforcement proceedings is also applicable to agency decision to forego investigative proceedings. *Chaney*, 470 U.S. at 838, 105 S.Ct. 1649 ("The general exception to reviewability provided by § 701(a)(2) for action 'committed to agency discretion' remains a narrow one, but within that exception are included *agency refusals to institute investigative* or enforcement proceedings, unless Congress has indicated otherwise.") (emphasis added).

On October 15, 1992, Plaintiff filed a second complaint with the OFCCP's regional office alleging a violation of section 503. On January 8, 1993, the OFCCP requested certain additional information and notified Plaintiff that if Plaintiff did not contact the OFCCP within 60 days, Plaintiff's complaint would be closed. On March 15, 1993, the OFCCP informed Plaintiff that he had failed to respond to their request for additional information and closed Plaintiff's complaint. On March 22, 1993, Plaintiff sought reconsideration of that decision with the director of the OFCCP. On October 5, 1993, the director found that Plaintiff's complaint was not timely filed and agreed with the regional office's decision.

On April 15, 1994, Plaintiff filed a third and final complaint with the OFCCP's regional office alleging a violation of section 503. On April 25, 1994, the OFCCP again requested additional information regarding his section 503 claim and notified Plaintiff that if Plaintiff failed to contact the OFCCP within 60 days, Plaintiff's complaint would be closed. On July 8, 1994, the OFCCP informed Plaintiff that it did not have jurisdiction to investigate Plaintiff's third complaint, that Plaintiff's third complaint referred to incidents stemming from Plaintiff's first complaint which resulted in a determination of no violation, and that Plaintiff had failed to respond to the OFCCP's request for additional information. The OFCCP closed Plaintiff's third complaint.

Section 503's implementing regulations provide that if a complaint contains incomplete information, the OFCCP "shall" seek the needed information from the complainant. 41 C.F.R. § 60–741.26(d). After review of Plaintiff's second and third complaints, the OFCCP complied with the mandatory language of 41 C.F.R. § 60–741.26(d) and sought additional information and notified Plaintiff that his complaints would be closed for failure to timely provide the information. The OFCCP asked Plaintiff to provide additional information by answering the following questions: [4]

---

4. The OFCCP sought this additional information on January 8, 1993 concerning Plaintiff's second OFCCP complaint. The same information was sought concerning Plaintiff's third complaint but included questions of whether Plaintiff had applied for a job within the last 180 days of employment at CSU, whether there was a job opening at CSU at the time of application and whether he had filed a complaint with the Equal Employment Opportunity Commission. (*See* Pl.'s Comp. at Ex. 12–51 to 12–52.)

1. Why do you believe the actions taken by the employer were because of your handicap.

2. Describe your handicap, or why you think the employer regarded you as handicapped.

3. Please furnish us with a *current* letter from your doctor or other *current* medical information concerning the handicap. Have the doctor or document you furnish to us indicate the diagnosis of your medical condition, the prognosis including future treatment, and also any physical/medical restrictions which you have.

4. Please tell us the last day you worked.

5. Please tell us the date of the last occurrence of discrimination. Please tell us what happened, who were the people involved, and what was the result? Be specific.

(Pl.'s Comp. at Ex. 12–19, 12–51 to 12–52).

Plaintiff believed that the information was sought to "disqualify" him and did not provide the requested information within 60 days. (*See* Pl.'s Comp. at 67.) Section 503's regulations provide that if the information is not furnished to the OFCCP within 60 days of the date of such a request, the case "may" be closed. *Id.* at § 60–741.26(d). Plaintiff did not provide the requested information within the 60 days and the OFCCP closed Plaintiff's complaints. The language of § 60–741.26(d) is clearly permissive. Thus, the decision to close the complaints for failure to timely provide requested information is committed to the OFCCP's discretion by law. Plaintiff cannot seek judicial review of the OFCCP's decisions to close his second and third complaints.

**B. *RICO Claim***

1. *Sovereign Immunity*

■■■■ Plaintiff alleges a RICO claim against the DOL. Under the doctrine of sovereign immunity, the United States may not be sued without its consent. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). The principle of sovereign immunity applies to federal agencies. "A suit against a federal agency that seeks relief against the sovereign [United States] is, in effect, a suit against the sovereign." *McMillan v. Department of Interior,* 907 F.Supp. 322, 325 (D.Nev.1995) (citing *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 687–88, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)). A waiver of sovereign immunity by the United States cannot be implied but must be unequivocally expressed. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The RICO statutes do not indicate that the United States has waived its sovereign immunity. *See* 18 U.S.C. §§ 1961–1962, 1964. And while the Ninth Circuit is silent on this point, other courts have concluded that a RICO claim cannot be maintained against the United States. *See Berger v. Pierce,* 933 F.2d 393, 397 (6th Cir.1991) ("it is clear that there can be no RICO claim against the federal government"); *United States v. Bonanno Org. Crime Fam. of La Cosa Nostra,* 879 F.2d 20, 23 (2d Cir.1989) (sources of congressional intent on the meaning of RICO does not evince an unequivocal expression of congressional intent to expose the United States to RICO liability).

■■■■ However, sovereign immunity does not bar damage actions against federal employees sued in their individual capacity. *Gilbert v. DaGrossa,* 756 F.2d 1455, 1459 (9th Cir.1985). Here, Plaintiff sues the individual DOL defendants in their official capacity. Plaintiff's complaint repeatedly states that the defendants' allegedly unlawful acts were committed in their "official capacity." (*See* Pl.'s Comp. at 66–68.) Plaintiff's RICO claim against the DOL is therefore barred by the doctrine of sovereign immunity.

2. *Failure to State a Claim under RICO*

Even assuming that Plaintiff's RICO claim is not barred by the doctrine of sovereign immunity, Plaintiff fails to state a RICO violation.

■■■■ Plaintiff alleges that the DOL conspired with the other defendants named in his complaint in violation of RICO. To state a claim under RICO a plaintiff must allege a "(1) conduct (2) of an enterprise (3) through a pattern, i.e. at least two acts that are sufficiently related, (4) of racketeering activity." *Miller v. Glen & Helen Aircraft, Inc.,* 777

F.2d 496, 498 (9th Cir.1985) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)).

"Racketeering activity" includes any act "indictable" under certain enumerated federal criminal statutes. *Schreiber Distributing v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1399 (9th Cir.1986); *see* 18 U.S.C. § 1961(1). " '[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* (quoting *Sedima,* 105 S.Ct. at 3285 n. 14).

Aside from one allegation, Plaintiff fails to allege any other acts which constitutes "racketeering activity" as defined in 18 U.S.C. § 1961(1). Plaintiff alleges the following acts as RICO violations: (1) the DOL "by direct threats of intimidation, harassment, and coercion in obstruction of justice, fraud, deceit, fraud as to Plaintiff, fraud upon the court, and abuse of process against the Plaintiff" failed to investigate Plaintiff's OFCCP complaints, failed to investigate the OFCCP's handling of his complaints and failed to bring charges against CSU (Pl.'s Comp. at 66–68); (2) the DOL harassed and intimidated Plaintiff into answering a disqualifying question (Pl.'s Comp. at 67); (3) the DOL failed to forward his case to the EEOC (Pl.'s Comp. at 68); (4) Joseph M. Hogan, in his "official capacity," filed a false investigative report claiming there was no discrimination by CSU (Pl .'s Comp. at 66); (5) the DOL failed to notify Plaintiff of his appeal rights in writing (Pl.'s Comp. at 68); and (6) the DOL forced Plaintiff to accept Social Security Disability by threat of murder and extortion. (Pl.'s Comp. at 66.)

The manner in which the DOL investigated and otherwise handled or disposed of Plaintiff's OFCCP complaints is not indictable and does not constitute "racketeering activity" as enumerated in 18 U.S.C. § 1961(1). Even assuming the truth of Plaintiff's allegations, a RICO violation simply does not exist.

Plaintiff does allege one act which may constitute racketeering activity.

Plaintiff alleges that the DOL forced Plaintiff "on Social Security Disability against his will with a direct threat of murder extorsion [sic], and fraud with the aid of an informal negotiator ..." (Pl.'s Comp. at 66.) "Racketeering activity" does include an "act or threat involving murder ... [and] extortion." 18 U.S.C. § 1961(1). However, an essential element of RICO actions is an allegation that the defendant engaged in a *pattern* of racketeering activity. *Sedima,* 105 S.Ct. at 3285; *Miller,* 777 F.2d at 498. At least two related acts of racketeering activity are required. *Id.* " '[T]wo isolated acts of racketeering activity do not constitute a pattern.' " *Id.* at 3285 n. 14. Here, Plaintiff has alleged one act of racketeering activity.

Furthermore, Plaintiff must also show that the DOL (1) received "income derived, directly or indirectly, from a pattern of racketeering activity" and used or invested any part of such income in the establishment or operation of any enterprise which engages in or affects interstate or foreign commerce; (2) through a pattern of racketeering activity acquired or maintained any interest in or control of any enterprise engages in or affects interstate or foreign commerce; (3) was employed by or associated with an enterprise which engages in or affects interstate or foreign commerce and conducted or participated in the conduct of such enterprises's affairs through a pattern of racketeering activity; or (4) conspired to violate any of the above provisions. *See* 18 U.S.C. § 1962(a), (b), (c), (d).

Some courts have gone further and stated that section 1962(a) is not violated—and accordingly plaintiff does not have standing—where the RICO defendants merely profit from a pattern or racketeering activity but do not otherwise invest the profits in a RICO enterprise which injures the plaintiff.[5] *See Walter Barker v. E.F. Hutton & Co., Inc.,* 1990 WL 257283, *3 (N.D.Cal.); *Chemical Device Corp. v. American Cyanamid Co.,* 1990 WL 56164 (N.D.Cal.) *Klein v. King,* 1990 WL 61950 (N.D.Cal.); *In Re: Rexplore, Inc. Securities Litigation,* 685 F.Supp. 1132, 1141–42 (N.D.Cal.1988); *Grider v. Texas,* 868

---

**5.** The Ninth Circuit Court of Appeals has not decided this issue.

F.2d 1147, 1150–51 (10th Cir.1989); *Rose v. Bartle*, 871 F.2d 331, 358 (3rd Cir.1989).

 Viewing Plaintiff's complaint with the required liberality and drawing all inference in Plaintiff's favor, it is clear that the DOL did not receive any income from the alleged racketeering activity, did not use or invest the income in an enterprise affecting commerce and did not acquire an interest in such an enterprise. Nor is the DOL employed by or associated with any such enterprise. It is difficult to discern what conceivable income or profit the DOL would have received, or otherwise benefitted, from allegedly mishandling Plaintiff's complaint or forcing Plaintiff on disability. It is even more difficult to imagine a possible RICO enterprise under the facts of this case. Further, not only has Plaintiff failed to allege that the DOL has profited from its alleged RICO activity, Plaintiff cannot demonstrate that the DOL then invested the profits in a RICO enterprise.

Based on all of the above reasons, the Court finds Plaintiff's RICO claim patently frivolous. "Congress was concerned in RICO with long term criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). "RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. University Students Co-operative Ass'n*, 965 F.2d 783, 785 (9th Cir.1992) (en banc), *cert. denied*, 506 U.S. 1020, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). This is an employment discrimination case. Plaintiff alleges a sweeping RICO conspiracy between his former employers and every administrative and government agency which did not render a decision in his favor. Plaintiff's dissatisfaction with the manner in which the DOL investigated his claims of employment discrimination do not rise to a RICO cause of action. The Court finds Plaintiff's RICO claims against the DOL completely frivolous and dismisses the claim with prejudice.

## C. *Federal Tort Claims Act*

 Plaintiff alleges that the DOL investigate Plaintiff's complaints in a false and unlawful manner, failed to notify Plaintiff in writing of his rights of appeal and harassed and threatened him during the course of the investigation. (*See* Pl.'s Comp. at 66–68.) Plaintiff similarly alleges that the DOJ failed to investigate Plaintiff's charges of harassment and coercion by the DOL. (Pl.'s Comp. at 70–71.) Plaintiff alleges a claim under the Federal Tort Claims Act ("FTCA"). (*See* Pl.'s Comp. at 82–83.) FTCA waives the sovereign immunity defense in tort claims against the United States. *See* 28 U.S.C. § 2671 *et. seq.* FTCA allows a claimant to recover damages against the United States for injuries caused by the wrongful acts of federal employees while acting within the scope of their employment. *See* 28 U.S.C. § 2671 *et. seq.* However, this waiver of sovereign immunity is strictly limited to its terms. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). FTCA requires that administrative remedies be exhausted before bringing suit. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). The procedural requirements for filing claims under FTCA are jurisdictional prerequisites which cannot be waived. *Cadwalder v. United States*, 45 F.3d 297, 299 (9th Cir.1995) (citing *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir.1992)); *House v. Mine Safety Appliances Co.*, 573 F.2d 609, 614 (9th Cir. 1978).

 A tort claim against the United States must be presented to the appropriate federal agency within two years of the date of accrual. 28 U.S.C. § 2401(b); *Staple v. United States*, 740 F.2d 766, 768 (9th Cir. 1984). To file a proper claim, the claimant must provide written notice sufficiently describing the injury to enable the agency to conduct an investigation and providing a sum certain as to damages. *Warren v. U.S. Dept. of Interior Bur. of Land Man.*, 724 F.2d 776, 780 (9th Cir.1984). A claimant may not file suit in federal court until the agency has disposed of it, or six months have passed and the agency has not acted. 28 U.S.C. § 2675(a).

 Plaintiff alleges that he has complied with FTCA requirements by filing a claim with the "Board of Control." (*See* Pl.'s Comp. at 82–83.) The "Board of Control" is not associated with the DOL or the DOJ and

is not the appropriate federal agency to bring an administrative claim. It appears that Plaintiff may be asserting that he has filed a tort claim with the State Board of Control as required to bring suit under the California Tort Claims Act. *See* Cal. Govt. Code § 911.2. Plaintiff has failed to exhaust his administrative remedies by filing an administrative claim for a sum certain with the DOL or the DOJ. Thus, the Court lacks jurisdiction over Plaintiff's FTCA claim. The FTCA claim is dismissed without prejudice. Plaintiff is denied leave to amend his complaint against the DOL and the DOJ.

### D. *Bivens Claim*

Because Plaintiff brings this action against federal officials and federal agencies, the Court construes Plaintiff's complaint as raising a cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* 403 U.S. 388, 91 S.Ct. 1999, the Supreme Court held that an action for money damages may be brought against federal agents acting under color of their authority for injuries caused by their unconstitutional conduct. A *Bivens* claim must be brought against the responsible federal official in his or her individual capacity only, not his or her official capacity. *Daly–Murphy v. Winston,* 837 F.2d 348, 355 (9th Cir.1987). *Bivens* does not authorized a suit against the federal government or its agency for monetary relief. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 1005–06, 127 L.Ed.2d 308 (1994); *Thomas–Lazear v. F.B.I.,* 851 F.2d 1202, 1207 (9th Cir.1988).

Plaintiff, however, is suing the individual DOL and DOJ defendants in their official capacity. Plaintiff's complaint repeatedly states that the defendants' allegedly unlawful acts were committed in their "official capacity." (*See* Pl.'s Comp. at 66–68, 70–71.) Because Plaintiff brings his claims against the federal defendants in their official capacity only, Plaintiff cannot maintain a *Bivens* claim.

Even assuming that amendment could cure this defect, Plaintiff's *Bivens* claim is also barred by the statute of limitations. The applicable state's personal injury statute

of limitations properly applies to *Bivens* claims. *Van Strum v. Lawn,* 940 F.2d 406, 410 (9th Cir.1991.) Thus, California's one-year personal injury statute of limitations codified in California Code of Civil Procedure § 340(3) applies to Plaintiff's *Bivens* claim. *Matthews v. Macanas,* 990 F.2d 467, 468 (9th Cir.1993) (citing *Van Strum,* 940 F.2d at 410).

The statute of limitations for a federal claim begins to run when a plaintiff knows or has reason to know of the injury that is the basis of the action. *Alexopulos v. San Francisco Unified School Dist.,* 817 F.2d 551, 555 (9th Cir.1987). Here, Plaintiff, requested an investigation of the manner in which the OFCCP was reviewing his complaints with the DOJ on June 16, 1994 and Plaintiff's third and last OFCCP complaint was closed on July 8, 1994. On July 20, 1994, the DOJ informed Plaintiff that it did not have the authority to review the OFCCP's actions and referred the matter to the DOL. (*See* Pl.'s Comp. at 71.) On December 20, 1994, the Director of Division of Internal Management Control notified Plaintiff that the DOL had reviewed the OFCCP's actions and found no impropriety in the handling of his complaints. Thus, Plaintiff knew or had reason to know of the injury which forms the basis of a *Bivens* claim as early as June 16, 1994 and July 20, 1994, and at latest on December 20, 1994.

Plaintiff filed this complaint on November 22, 1996, approximately 23 months after December 20, 1994, and eleven months after the statute of limitations had expired on his *Bivens* claim.

However, "[a] motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Supermail Cargo, Inc. v. U.S.,* 68 F.3d 1204, 1207 (9th Cir.1995) (quoting *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980)). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail,* 68 F.3d at 1207.

Plaintiff alleges that the statute of limitations on all his claims should be equitably tolled. Under California's "equitable tolling" doctrine, the running of the statute of limitations period is tolled when an individual has several formal legal remedies and reasonably and in good faith pursues one. *Jones v. Tracy School Dist.*, 27 Cal.3d 99, 108, 165 Cal.Rptr. 100, 611 P.2d 441 (1980). Whether these proceedings equitably tolled the statute of limitations on Plaintiff's claims requires application of three elements: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence for the second claim; (3) good faith and reasonable conduct by the plaintiff. *Addison v. State of California*, 21 Cal.3d 313, 319, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). "The doctrine of equitable tolling focuses on the effect of the prior claim in warning the defendants in the subsequent claim of the need to prepare a defense." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993). The timely notice and lack of prejudice requirements are not established unless the claims are so similar that the first action alerts the defendant to the necessity to investigate facts which form the basis for the claim filed after the statute of limitations has run. *Garabedian v. Skochko*, 232 Cal.App.3d 836, 846, 283 Cal. Rptr. 802 (1991).

The statute of limitations on Plaintiff's *Bivens* claim began to accrue, at latest, on December 20, 1994. And while Plaintiff sought numerous other legal remedies before the Workers Compensation Appeals Board ("WCAB"), the Public Employment Relations Board ("PERB"), the State Personnel Board ("SPB") and the Equal Employment Opportunity Commission ("EEOC"), the DOL and the DOJ were not parties to those administrative actions. Those proceedings were instituted against the CSU. Thus, the WCAB, the PERB, the SPB and the EEOC proceedings would not have provided the DOL or the DOJ timely notice of the need to prepare a defense to Plaintiff's present federal claims. If the Court were to find otherwise, the DOL and the DOJ would be prejudiced in gathering evidence to defend against Plaintiff's present claims. The statute of limitations on Plaintiff's *Bivens* claim was not equitably tolled by these proceedings.

Plaintiff also invokes the doctrine of equitable estoppel and laches to preclude the DOL and the DOJ from prevailing on their statute of limitations defense.

'The doctrine of equitable estoppel is based on the theory that a party who by his declarations or conduct misleads another to his prejudice should be estoppel from obtaining the benefits of his misconduct. Under appropriate circumstances, equitable estoppel will preclude a defendant from pleading the bar of the statute of limitations where the plaintiff was induced to refrain from bringing a timely action by the fraud, misrepresentation or the deceptions of defendant.'

*Ateeq v. Najor*, 15 Cal.App.4th 1351, 1356, 19 Cal.Rptr.2d 320 (1993) (quoting *Kleinecke v. Montecito Water Dist.*, 147 Cal.App.3d 240, 245, 195 Cal.Rptr. 58 (1983)) (citations omitted).

Plaintiff fails to alleges any facts which demonstrate conduct by the DOL and the DOJ which induced or misled Plaintiff from filing this action in a timely manner. Equitable estoppel does not apply to this case.

The " 'defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' " *Brown*, 166 Cal.App.3d at 1158, 213 Cal.Rptr. 53 (quoting *Conti v. Board of Civil Service Com'rs*, 1 Cal.3d 351, 359, 82 Cal. Rptr. 337, 461 P.2d 617 (1969)). Again, Plaintiff fails to allege any acts by the DOL or the DOJ which delayed Plaintiff from filing this complaint. Laches is also inapplicable to this case.

### E. *Dismissal without Leave to Amend*

"[L]eave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir.1962)). Where the theory presented is lacking in legal foundation and it is clear that amend-

ment would not correct the defect, the court has the discretion to deny amendment. *Shermoen v. United States,* 982 F.2d 1312, 1319 (9th Cir.1992). A proposed amendment is "futile" only if no set of facts can be proved under the amendment which would constitute a valid claim or defense. *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988) (citations omitted).

██ Plaintiff's complaint is confusing and conclusory. Plaintiff's complaint consists of mere allegations and often fails to allege the causes of action Plaintiff is asserting against the DOL and the DOJ. However, given Plaintiff's pro se status, the Court has construed Plaintiff's complaint liberally and addressed any and all potential causes of action. Yet, each potential claim has been dismissed. The Court finds allowing Plaintiff leave to amend his complaint against the DOL and the DOJ would be futile. The OFCCP's decisions are immune from judicial review and Plaintiff has not exhausted his administrative remedies under FTCA. Amendment would not cure these defects. Further, for the numerous reasons previously discussed, Plaintiff's RICO claim is frivolous and completely lacking in legal foundation. Allegation of other facts consistent with Plaintiff's complaint could not possibly cure the deficiency. Finally, Plaintiff's *Bivens* claim is barred by the one-year statute of limitations and it is clear from Plaintiff's complaint that equitable tolling principles do not apply. The Court is convinced beyond a doubt that Plaintiff would not be able to prove the timeliness of this claim.

## CONCLUSION

The Court grants in part the DOL's and the DOJ's motions to dismiss with prejudice and grants in part the DOL's and the DOJ's motions to dismiss without prejudice as follows:

1. Plaintiff cannot seek judicial review of the DOL's decisions. This claim is dismissed with prejudice.
2. Plaintiff's claim under RICO is dismissed with prejudice as frivolous.
3. Plaintiff's *Bivens* claim is dismissed with prejudice as barred by the statute of limitations.

4. Plaintiff's claim under FTCA is dismissed without prejudice for failure to exhaust administrative remedies.

IT IS SO ORDERED.